BLALOCK et al. *v.* MAGEE et al.

In Banc. Feb. 14, 1949.

(38 So. (2d) 708)

Shelby Rogers, and **Watkins & Eager,** for appellants.

212

214

216

218

220

222

224

226

Jackson, Young, Daniel & Mitchell, for appellees.

234

236

238

240

**McGehee, C. J.**

This suit involves a contest of the purported last will and testament of Mrs. Jimmie Dye Hailey Magee, wife of the appellee Dr. Hosea F. Magee, a physician and surgeon of Jackson, Mississippi. The contestants are the husband and some of the sisters of the testatrix, all devisees under the will, and the proponents are the appellants James A. Blalock, a nephew of Mrs. Magee, and his mother Mrs. Agnes Hailey Blalock, and other members of the Hailey family, who are all likewise devisees under the will. The validity of the instrument is contested on the ground of the lack of testamentary capacity and because of undue influence alleged to have been exerted, by the two proponents hereinbefore specifically mentioned, in connection with the preparation and execution thereof.

The proponents requested a directed verdict in their favor on both grounds of the contest, but such instruc-

tions were refused by the trial court and there was a general verdict by the jury against the validity of the will. The principal assignment of error on this appeal is the failure of the Court to grant these instructions for a verdict in favor of the proponents.

At the trial on the contest the proponents established the probate in common form of the purported will by the introduction of the petition for probate, the affidavits of the two subscribing witnesses, the original instrument and the decree admitting the same to probate. They thereupon rested their case, awaiting the introduction of proof by the contestants to sustain the allegations of the contest to the extent of overcoming or equalizing the prima facie case presented by the proof of probate in common form.

To overcome the prima facie case thus made, the contestants introduced 29 witnesses, whose testimony was devoted almost exclusively to their acquaintance, association and experiences with the testatrix, their opinions as to her want of testamentary capacity and the facts and incidents upon which such opinions were based, except that some of the contestants (other than Dr. Magee, who was not permitted to testify at all because of his incompetency to do so as sole heir at law of the testatrix) testified in regard to the close relationship between the testatrix and James A. Blalock, who resided in her home for a number of years, and that existing between the testatrix and her sister Mrs. Agnes Hailey Blalock, who was a widow living in the State of Virginia but who had visited in the Magee home for three months just prior to the date on which the will is alleged to have been executed and had prepared or obtained and mailed to Mrs. Magee the form of the original draft thereof, and also except the testimony of Miss Jimmie Mae Tucker, one of the subscribing witnesses, introduced by the contestants for the purpose of showing that though the witness was able to identify the signatures of the testatrix and that of the other subscribing witness and her own,

she had no independent recollection of the occasion, year, circumstances, or the fact of the testatrix having signed in her presence any instrument purporting to be a will. The other subscribing witness was unable to be present and did not testify.

The instrument in question is typewritten and on the letterhead of Dr. Magee, and bears the date at the caption thereof of August 3, 1943. The blank places left in the typewritten draft are filled in with pen and ink as to the name of some of the donees of certain specific articles of personal property and the names are left blank as to the donees of other such articles therein mentioned. The instrument bears no date at the conclusion thereof. But there is a notation on the back of the instrument in the handwriting of the testatrix bearing date of September 18, 1945, in the following words:

"In case of my sickness & if I am not able to sign papers or checks & money is necessary I ask that Mrs. Agnes H. Blalock and Mrs. Lyda H. Sproles be allowed to draw money for my needs.

"/s/ Jim Hailey Magee

"/s/ Mrs. Jimmie Hailey Magee.

"Some money in name of Mrs. H. F. Magee."

It was testified by a Mrs. Parker, who served as housekeeper and attendant or companion of the testatrix for several years prior to her death, that the testatrix stated to her in the fall of 1944 that she had a will but had not signed it; that the testatrix was then worrying a great deal about what to do about her property and could not make up her mind in regard thereto. And since the subscribing witness, Miss Jimmie Mae Tucker, had testified before the jury that she did not remember anything about the occasion of the execution of the will; or when it was signed, the jury was not required to find that the same was executed on August 3, 1943, unless they had believed so from a preponderance of the evidence.

The first bequest set forth in the instrument is in favor of the husband and consists of "My interest in all

government bonds, building and loan stock and other moneys jointly owned by us." It seems that these bonds and some of the monies on deposit were payable to "Dr. H. F. Magee or Mrs. H. F. Magee," and her interest therein would have been paid to him at her death, as survivor, without regard to whether or not she had made a will.

The next provision is a devise to Agnes Hailey Blalock and James A. Blalock of a half interest in fee simple in the residence property which was being occupied by the testatrix and her husband as a home, subject to the right of her husband to occupy the same during his lifetime, and the duty was imposed upon the said devisees to in return "see that my husband Hosea F. Magee is cared for in his old age" and that he "have someone to care for his home, his clothes and see that he needs nothing." This provision in the will further stipulates that "the money for his support has been provided by my life insurance, $9,000.00," then it is stated that the "money provided shall be made available to James A. Blalock and Agnes Hailey Blalock to meet the necessary expenses and such extras as my husband shall need."

Dr. Magee was the beneficiary in the life insurance policy and would have received the proceeds thereof at any rate. The last above quoted statement from this provision of the instrument, appears to be an effort to give unto these two devisees the control of either the proceeds of the life insurance wherein her husband is the beneficiary of the funds to be derived from the government bonds, building and loan stock and other monies which were jointly owned by the testatrix and her husband, or the survivor of them, if not control of the funds to be derived from both sources, although the husband was at that time virtually in the prime of life.

The purported will then contained a provision bequeathing unto the said James A. Blalock certain household furniture which had been purchased and paid for by Mrs. Lilly Hailey Martin, a sister of the testatrix,

now of Memphis, Tennessee, and who had left it in the Magee home on account of the fact that their mother lived there for more than a decade prior to her death, and it was shown that Mrs. Magee knew the circumstances as to the purchase and ownership of this furniture. And there followed devises in favor of all the other proponents and to each of the contestants, save to Dr. Magee, for undivided interests respectively in the remainder of her estate.

Then under the head of "additional bequests" there is one to Mary Catherine Odom, one of the contestants, of a cluster diamond ring, and "to V. Clair bar pin; to ———— Onyx ring; To ———— watch." The names of two of the beneficiaries and the one-tenth undivided interest of each in the remainder of the estate, as well as the names of the donees of the cluster diamond ring and bar pin, respectively, were left blank in the type-written draft of the will and later filled in with pen and ink.

Except as to the interest devised in the residence property in favor of Agnes Hailey Blalock and James A. Blalock there was no discrimination under the terms of the will as to the remainder of the estate against the members of the Hailey family who joined in the petition as contestants of the same, and of course if the verdict of the jury against the validity of the purported will should be upheld then the entire estate of Mrs. Magee will go to the husband as her sole heir at law, since they had no children.

■■■ It was neither unnatural nor evidence of abnormality that the testatrix should have favored her widowed sister Agnes Hailey Blalock, who was not in as good financial circumstances as other members of the Hailey family, and also her nephew who had lived in her home for many years, that is to say, James A. Blalock, under all the facts and circumstances shown; but, it was for the serious consideration of the jury as to whether or not it was either natural or rational that she should

have devised unto them a half interest in the home occupied by her husband, thereby complicating his status as a home owner, since the testatrix had ample personal assets, easily convertible into cash, with which to have sufficiently provided for them to an extent equal to or greater than the value of the undivided interest devised to them in the residential property at Jackson, and especially when it is considered that such devise was subject to the right of occupancy by her husband for life and that the devisees could not receive any revenue therefrom or sell the same during such time, and in view of the further fact that Mrs. Blalock lived in Virginia and was in greater need of money than she was of an undivided interest in a home in another state which she could not utilize to any advantage.

The contestants, other than Dr. Magee, were permitted to testify on the trial, since they are claiming nothing under the will, and would not inherit if Mrs. Magee is held to have died intestate.

Several doctors, including some psychiatrists, and two of the nurses of the testatrix, gave their opinion on the question of mental capacity, all of whom knew the testatrix, along with the great number of other witnesses for the contestants; and one expert testified for the proponents, after hearing all of the witnesses in the case, but who had made no personal observation of the testatrix, that in his opinion there was no lack of testamentary capacity on her part to make a will, and 19 lay witnesses introduced by the proponents also gave their opinions, based upon their association and acquaintance with the testatrix, that she possessed the necessary testamentary capacity.

No useful purpose could be served by relating in this opinion the facts and incidents upon which the opinions of the numerous witnesses on both sides had based their opinions. It is sufficient to say that after a reading, at the conference of all the members of this Court, of the questions and answers of the witnesses for the

contestants on the issue of testamentary capacity and the recitals in their testimony of the incidents upon which such opinions were based, we are of the unanimous opinion that there was ample evidence to warrant the trial court in submitting that issue to the jury for its finding thereon, not only because of the well settled rule that a fact which the testimony reasonably tends to establish and every reasonable inference to be deducted therefrom will be held to have been established against the party asking for a peremptory instruction in his own favor, but because we think that the preponderance of the evidence was in favor of the contestants upon the issue in question.

Under the decision of Sheehan v. Kearney, 82 Miss. 688, 21 So. 41, 45, 35 L. R. A. 102, involving a will contest on the ground of lack of testamentary capacity and the existence of undue influence, it was held that: "The issue is single,—will or no will. And, when we consider that the exercise of undue influence implies some degree of mental capacity to be overcome, and how indissolubly the two things are implicated the one in the other, it seems to us clear that the burden as to both is on the proponent throughout, and there is no shifting of this burden."

And even in a criminal case, the court has announced and applied the rule that "where there is one good count sustained by the proof, a general verdict of guilty will be referred to and sustained by it, although there are other counts in the indictment which are defective or unsupported." Goins v. State, 155 Miss. 662, 124 So. 785.

And in the civil case of Levy et al. v. McMullen, 169, 152 So. 899, the court observed that the principal argument was directed to the sufficiency of the proof upon the first count of the declaration, and it was said that: "We lay aside that count, since, in our opinion, the judgment must be sustained upon the second count. There was a general verdict for the plaintiff. Within

the usual rule dealing with general verdicts there is here but one cause of action; the two counts state differences in detail leading to exactly the same liability. In such cases, in the absence of any motion or request in the trial court bearing upon the point, a general verdict is sufficient if sustained under either count.''

In the recent case of Ward v. Ward et al., Miss., 33 So. (2d) 294, 295, involving a will contest on the grounds of lack of testamentary capacity and the existence of undue influence, the court said that ''since the verdict of the jury was a general one and invested with uncertainty as to whether it is referable to either or both issues, there is raised a serious question whether, in view of what has been said, the cause should at all events be remanded. In view of what follows, we do not decide this question.'' The court reversed, and rendered a decree here for the proponent for the reason that neither of the grounds for alleging that the will was invalid had been established in view of the preponderance of the evidence offered by the proponent on these issues.

In the instant case there was a request for a peremptory instruction on each of the grounds of the contest, and both instructions were refused as hereinbefore stated. The issue then submitted to the jury was whether or not the proponents had shown by a preponderance of the evidence both testamentary capacity and lack of undue influence at the time of the execution of the will. And since under the holding in Sheehan v. Kearney, supra, the issue was single—will or no will, and the burden was on the proponents to prove both testamentary capacity and lack of undue influence, the general verdict of the jury should be sustained in the instant case if they failed to prove either or both of these necessary requirements. This is especially true where practically the entire trial of several days duration was consumed with the hearing of the testimony on the question of testamentary capacity or incapacity, and where the contestants obtained no instructions on undue influence as a separate issue,

but rather upon the burden of proponents to establish both testamentary capacity and lack of undue influence by a preponderance of the evidence. Since the jury was amply warranted in finding that the proponents had not met this burden, and since it is extremely doubtful whether any other jury would reach any different verdict as to the invalidity of the will on the single issue of will or no will on a new trial, and especially on the question of the want of testamentary capacity, we do not feel justified in reversing the case because of the refusal to grant a peremptory instruction on the question of undue influence. And we do not, therefore, discuss herein the sufficiency of the proof on that question.

 █ But it is strongly urged by the proponents that court committed prejudicial error in permitting the several lay witnesses of the contestants to give their opinions as to the mental incapacity of the testatrix to make a will on the date of its alleged execution without having first stated the facts upon which such opinions were based. However, we have searched this voluminous record in vain to find any objection interposed by the proponents to the expression of these opinions by the witnesses for the contestants *on the ground that they had not previously stated the facts upon which their opinions were given.* The objections were on the ground that the proffered testimony involved the opinion of a lay witness in each instance. Lay witnesses are competent to testify on such an issue where they first give the facts upon which their opinions are based. In this case the course followed was that the witnesses first gave their opinion and then stated the facts or incidents in connection with their acquaintance, association and experience with the testatrix. We are of the opinion that under the state of this record no reversible error was committed by the admission of this testimony.

In the case of Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232, 236, it was said that: "It is true that no one of these actions (of the testator), by itself, would

be held to establish his mental incapacity, at the time he executed the will; but taken as a whole, we are of the opinion that although intrinsically weak, there was enough to avoid the scintilla rule, which is held not to be sufficient to raise an issue of fact as to his mental capacity.'' Although the Court held in that case that the verdict in favor of mental incapacity was against the great weight of the evidence and reversed the case for a new trial for that and other reasons, it was nevertheless held on a state of facts of less weight on the issue of mental incapacity than those testified to in the instant case, a peremptory instruction in favor of the proponents was properly denied.

Finally it is insisted that the trial court in the case at bar erred in giving alleged repetitious, highly prejudicial instructions demanding a verdict for appellees if the testamentary capacity of the testatrix at the time of the execution of the will was even uncertain or doubtful in their minds. One of the instructions complained of was to the effect that ''the burden of proof is upon the proponents of the will to show by a preponderance of the evidence that the alleged testatrix, Jimmie Dye Hailey Magee, was at the time of the execution of the alleged will of sound and disposing mind; and that if, upon consideration of all the evidence in the case the jury finds that this burden has not been met *and* that it is left uncertain and doubtful in your minds whether the said Jimmie Dye Hailey Magee was of sound and disposing mind then it will be the duty of the jury to find for the contestants.'' (Italics ours)

Another instruction complained of told the jury ''that the buden of proof is upon the proponents of the will to to show by the preponderance of the evidence that the alleged testatrix, Jimmie Dye Hailey Magee, was at the time of the execution of the alleged will of sound and disposing mind; and that if upon consideration of all of the evidence in the case the jury finds that this burden has not been met *and* that it is left uncertain and

doubtful in your minds whether the said Jim Dye Hailey Magee was of sound and disposing mind then it will be the duty of the jury to find for the contestants.'' (Italics ours)

There was an instruction for the proponents expressly defining what was meant by ''a preponderance of the evidence'' and that if after considering the weight and creditability of the evidence, ''your minds are naturally led to the conclusion that the instrument was executed by Mrs. Magee when she was mentally able to do so and know and understand what she was doing and the effect thereof, then the court tells you as a matter of law such instrument would under such circumstances be and constitute her last will and testament, and if you so believe from the evidence, then your duty is to return a verdict upholding and sustaining said will, and the form of such verdict may be: 'We, the jury, find for the proponents.' ''

It is to be noted that the two instructions for the contestants hereinbefore mentioned said the jury was first required to find that this burden (of showing by the preponderance of the evidence that the testatrix was of sound and disposing mind) had not been met. Therefore, if they did so find it would have been immaterial as to what else they may have thought about the evidence in the case. And regarding the statement contained therein, ''and that it is left uncertain and doubtful in your minds'' whether the testatrix was of sound and disposing mind, it was expressly stated by the Court in the case of Brown v. Walker, Miss., 11 So. 724, that an instruction was fatal in imposing too great a burden upon the proponents as there worded on the question of a doubt left in the mind of the jury, but the Court then proceeded to say:

''The true statement of the law applicable to the developed facts of the case would have been substantially this: That, if all the evidence in the case left it doubtful whether the instrument propounded was the true last will of the deceased, the jury should find against its

validity, for it was incumbent upon the proponents, by a preponderance of the evidence, to reasonably satisfy the mind of the jury that the instrument was, in truth, the last will of the deceased; and this is what was, in effect, contained in the contestant's second charge. On this she should have been made to stand.''

It will be noted that in the foregoing quotation the court gave its reason for saying that ''if all the evidence in the case left it doubtful whether the instrument propounded was the true last will of the deceased, the jury should find against its validity'' by saying ''for it was incumbent upon the proponents, by a preponderance of the evidence, to reasonably satisfy the mind of the jury that the instrument was, in truth, the last will of the deceased.'' We think that the two instructions for the contestants hereinbefore quoted are an improvement in favor of the proponents on the above quoted statement of the Court contained in the opinion in Brown v. Walker, supra, in that under the common acceptation and meaning of the language complained of in these instructions, the jury should have reasonably understood that the use of the word ''and'' therein meant that it should be left uncertain and doubtful in their minds because of the fact that the burden had not been met of showing by a preponderance of the evidence that the testatrix was of sound and disposing mind.

At any rate, when all of the instructions are considered as a whole we think that the jury was correctly informed that the burden which rested upon the proponents was to show testamentary capacity and lack of undue influence by a preponderance of the evidence. They were so advised by the instructions obtained by the proponents and other instructions obtained by the contestants.

Some of the Judges are of the opinion that it is unnecessary that we should reaffirm as being in accord with the better practice in obtaining instructions by a contestant in a will case or a defendant in other civil cases, the

rule announced in Brown v. Walker, supra, hereinbefore quoted; and because of the risk of error to be incurred in trying to properly phrase an instruction containing such words as being "left uncertain and doubtful," we think it would avoid the hazard of reversal instant thereto, in cases where a too close issue of fact is involved, if a contestant in a will case or defendants in other civil cases should be content for their instructions on the burden of proof to go no further than to advise the jury that the proponent or plaintiff is required to establish the issue by a preponderance of the evidence.

As illustrating the risk to be incurred in drafting instructions containing words "left uncertain and doubtful" in civil cases it was held in the case of Gentry v. Gulf & S. I. R. Co., 109 Miss. 66, 67 So. 849, 850, that an instruction should not have been given which read as follows: "The court instructs the jury, for the defendant, that if they are in doubt as to whether plaintiff was injured or not in the derailment of the train, and this doubt cannot be removed by a clear preponderance of the evidence in the case, the verdict of the jury should be, 'We, the jury, find for the defendant.' " However, this instruction emphasizes to the jury in the forepart thereof "that if they are in doubt," etc., whether from a preponderance of the evidence or not, and omitted after the word "and" at the beginning of the next clause the words "if from a consideration of all the evidence," and which words are in the instructions complained of in the instant case.

In the case of Stevenson v. Yazoo & M. V. R. Co., 112 Miss. 899, 74 So. 132, 133, the Court condemned a lengthy instruction containing a recital of numerous alleged facts, because it concluded by the use of the words after a semi-colon, as follows: "and further the court charges you that, if you are in doubt about this proposition and cannot say of a certainty which (of two acts or conditions) was the cause of the damage, then is it your duty under the law to return a verdict for the defendant."

The instruction, however, contained no reference to the burden of the plaintiff as to the preponderance of the evidence.

In the case of Durrett v. Mississippian R. Co., 171 Miss. 899, 158 So. 776, the Court condemned an instruction as being obviously erroneous which read as follows: "The court further instructs the jury for the defendant that if after consideration of all the evidence in the case the evidence for the plaintiff and the defendant is evenly balanced *or* if you are uncertain or in doubt from the evidence in the case how the fire was set out, . . ." the verdict should be for the defendant. The use of the word "and" in the instruction complained of in the instant case clearly distinguishes it from the instruction last above quoted in that the instruction here required that the jury should first believe that the proponents had not met the burden of proof and that it was (for that reason) left uncertain and doubtful as to whether or not the testatrix was of sound and disposing mind.

However, the case of Brown v. Walker, supra, has not been overruled and was cited by the Court in Warren v. Sidney's Estate et al., 183 Miss. 669, 184 So. 806, as to the burden of proof in a will contest.

After a careful consideration of all the evidence and the legal questions involved we have concluded that no error was committed by the trial court which would justify a reversal of the case and that the verdict of the jury was justified under the proof, and that, therefore, the judgment holding the will to be invalid should be affirmed.

 If it should be assumed, as contended for by the the proponents, that there was not one iota of proof to sustain a verdict on the alleged ground of undue influence, but which we do not discuss, then it should be further assumed that the verdict of the jury was on the ground of want of testamentary capacity which was amply supported in favor of the contestants.

Affirmed.

**Roberds, J.,** (dissenting in part).

I concur in the conclusion that the question of capacity of testatrix to execute a will was a question for the jury under the evidence in this case. However, I am of the opinion the request of proponents for an instruction telling the jury to find for proponents on the question of undue influence should have been granted, and that the granting to contestants of the if-you-have-a-doubt instruction on testamentary capacity of testatrix was erroneous.

There was no substantial proof whatever of undue influence. It was misleading to leave that issue before the jury. What effect that had on the verdict cannot be known. Indeed, the verdict might have rested entirely on that issue so far as this record discloses. In Ward v. Ward, Miss., 33 So. (2d) 294, the Court pretermitted a decision of this question. The very fact the verdict is general and that no one can say on which ground it rests, or whether on both grounds, demonstrates the necessity, in the interest of justice, of eliminating from consideration by the jury of a question presenting no issue for decision by it. Leaving that question before the jury can only result in confusion and uncertainty.

The if-you-have-a-doubt instruction was justified by the old case of Brown v. Walker, Miss., 11 So. 724, but the rule announced there ought to be clarified and modified. The majority opinion, in effect, does that. The danger is that the the jurors will test whether proponents have shown testamentary capacity by whether the jurors have a doubt on that question. Few wills would be sustained if the test of mental capacity rested upon the jurors having a doubt, or being doubtful, of such capacity after hearing a parade of the pecularities, eccentricities and acts of forgetfulness of testators, although such testators might have possessed the brightest minds of their day.