WALLACE, et al. *v.* HARRISON, et al.

June 8, 1953

No. 38754 34 Adv. S. 197 65 So. 2d 456

156

*Arrington & Arrington*, Hazlehurst, for appellants.

158

W. M. *Broome,* Crystal Springs, for appellees.

Lotterhos, J.

This case involves a will contest. Emma Morgan is alleged to have executed her will on November 6, 1948, leaving all of her property to her niece, Mattie Wallace, and the husband and children of Mattie Wallace, appellants. The will appears to have been executed by Emma Morgan by her mark, and to have been witnessed by Sam Corley and his wife. Emma Morgan died on October 31, 1951, and the alleged will was duly probated in common form. Thereafter, John Harrison and others, heirs of Emma Morgan and appellees herein, filed a contest of the will. On trial by jury in chancery court,

there was a decree in favor of the contestants, from which this appeal is taken.

The two grounds of attack on the will which were submitted to the jury were that (1) it was not executed in the manner required by statute and that (2) Emma Morgan lacked testamentary capacity.

At the trial, the proponents, appellants, introduced the record of the original probate, and rested. The contestants, appellees, then offered several witnesses on the issue of mental capacity, who testified to strange and unusual conduct of the testatrix during the last few years of her life. For example, there was testimony that she had insisted that there was no timber on her place, when in fact there was timber there; that she would frequently demand that a fire be made, even in the summer months, stating that she was cold; that often she would not recognize her friends; that she mumbled, and "hollered" at night; that after eating a meal she would claim she had not eaten; and that she would imagine some one had gotten into the house at night. Emma Morgan was in her late seventies, and had been very ill about 1947. Several of these witnesses were of the opinion that she was not mentally capable of making a will, and that her mind was not right. The proponents' witnesses stated that on several occasions when they saw the testatrix she was normal and all right.

On the issue of due and proper execution of the will, the proponents had the benefit of the probate in common form, and of the testimony of Sam Corley, one of the subscribing witnesses, who stated that he and his wife went to Emma Morgan's home on November 6, 1948, that she executed the will by affixing her mark, and that he and his wife then witnessed the will at her request and in her presence. The contestants offered as a witness, Mattie Jackson, who had lived with the testatrix for several years and took care of her. Mattie Jackson stated that Sam Corley and his wife did not come to the house on November 6, 1948. In attempting to im-

peach the testimony of Sam Corley, the contestants obtained his admission that he had signed a written statement to the effect that he did not know whether Emma Morgan made her mark on the will, that Mattie Wallace brought the document to his house, that Emma Morgan was not there, and that Mattie Wallace requested him and his wife to sign as witnesses.

It is argued by appellants that they were entitled to a directed verdict both on the issue of due execution of the will and the issue of testamentary capacity. In our opinion, neither point is well taken, and, on this record, the issue was for the jury's decision in each instance. It is true that probate of the alleged will was prima facie evidence of the validity of the will (Sec. 507, Code of 1942), and that proof of the probate was all that was required of proponents initially in meeting the burden of proof resting upon them (see Bearden v. Gibson, Miss., 60 So. 2d 655, and cases therein cited). However, in the case at bar, the contestants adduced evidence sufficient to make a jury question.

It is claimed by the contestants that the will was invalid because it was executed by the mark of the testatrix, which she made, according to appellants' proof, and that her name appearing beside the mark was not shown to have been written there at her request. This contention is not sound. According to Sec. 657, Code of 1942, a will must be "signed by the testator or testatrix, or by some other person in his or her presence, and by his or her express direction"; but, in Sheehan v. Kearney, 82 Miss. 688, 21 So. 41, the Court held, in considering Sec. 4488, Code of 1892, which contained the same language as quoted above, that the statute does not require the signature to a will to be written out, and that a mark may be adopted as a signature. It was said—"Any signature or mark signed by the testator, or by another in his presence and at his express direction, to the will, as and for his completed signature, and acknowledged and adopted by him as such at the time, in the presence of

the subscribing witnesses, is a sufficient signing within the meaning of Code 1892, Sec. 4488.''

██ ██ Appellants argue that error was committed when the court below granted to the contestants five instructions to the jury on the question of due execution of the will. Three of the instructions required the jury to believe ''from all of the competent evidence in this case . . .'' The use of the term ''competent evidence'' in an instruction in this manner has been condemned by the Court in Ellis v. Ellis, 160 Miss. 345, 134 So. 150, where it was said: ''Competency of the evidence offered is determined by the court, and it is the duty of the jury to consider all the evidence which the court has held to be competent and has admitted.'' But we do not find it necessary to determine whether this error alone would be reversible, as the case must be reversed and remanded for other reasons.

██ ██ In three of said instructions the jury was told that it was necessary for the will to be attested by two ''creditable'' witnesses. Although the statute (Sec. 657, Code of 1942) states that a will, not wholly written and subscribed by the testator, must be attested by ''two or more credible witnesses,'' yet it is well established that what the statute means is that the witnesses must be ''competent'' rather than ''credible.'' In King v. King, 161 Miss. 51, 134 So. 827, a similar instruction given to a contestant was held to be fatally erroneous, and the rule was discussed at some length. The gist of the holding is shown by this language from the opinion: ''This makes the validity of the will depend upon whether the witness or witnesses who signed it as such were men of truthful reputations or men of truthful character, rather than the fact that they were competent to testify in the court.'' In the case at bar, ██ ██ these instructions were particularly prejudicial in view of the fact that the subscribing witness, Sam Corley, who testified at the trial, was vigorously attacked, in the effort to impeach him, by use of a statement he had signed which was in con-

flict with his testimony on the vital issue of whether the testatrix was present at the time and place of signature by the witnesses. The jury might well have believed that Corley, having signed a statement of certain facts and then testifying to the contrary, was not a credible or trustworthy witness, although there is no doubt of his being a competent witness. This case must be reversed because of the giving of these instructions to the contestants.

Exception is also taken to another instruction given at the request of the contestants. It told the jury, on the issue of mental capacity, to examine the disposing parts of the will "to ascertain whether they are so extravagant and unreasonable in forgetfulness of her natural heirs as to be attributed to a distorted mind and hence if you find from the evidence that the alleged will is the product of such a mind . . ." In condemning an instruction of this type, this Court has stated, in King v. Rowan, 82 Miss. 1, 34 So. 325:

"There doubtless are many cases in which the unnaturalness or unreasonableness of a will may, under proper qualifications, be accepted by the jury as one of the elements in determining the validity of the will as one having been obtained by undue influence, or as having been made without testamentary capacity. But courts should always, in giving this principle in charge to a jury, be careful to scrupulously guard the principle, so as to inform the jury that the issue which they are to try is whether the testator had testamentary capacity, or whether, though having it, he had been unduly influenced; and not whether, in the opinion of the jury, the will was an unnatural or an unreasonable one. It should be made clear to the jury that, however unreasonable and unnatural or unjust they may think the will is, they must uphold the will if, notwithstanding, they believe the testator had testamentary capacity, and was not unduly influenced."

In the case at bar, the will left the testatrix's property to her niece, who had at one time lived with her, and to the niece's husband and children. The heirs were a brother, a sister, another niece, and a nephew, none of whom lived in the house with the testatrix. In these circumstances, it can hardly be said that there was anything unreasonable or unnatural in the terms of the will. But, aside from that, the instruction did not properly qualify the extent to which the jury might consider the terms of the will, as required under the doctrine of the King case, supra, and it unduly directed attention to the reasonableness or unreasonableness of the will as a deciding factor. As we have observed, the nature of the disposition made by this particular will has little if any bearing on the issue of testamentary capacity, and it certainly should not have been submitted to the jury with the particularity and forceful effect given it by this instruction. It should be commented also that ██ the ability to make a will does not depend upon whether the testator has "a distorted mind," but upon whether at the time of the execution thereof he understands and appreciates the nature of his act, the beneficiaries of his bounty, and their relation to him, and is capable of determining how he desires to make disposition of his property. See Cowart v. Cowart, 211 Miss. 459, 51 So. 2d 775.

Appellants have assigned error on account of another instruction which the trial court gave at the request of the contestants. ██ This instruction properly placed the burden of proof upon the proponents, but then added that "if upon consideration of all of the evidence in this case, the jury finds that this burden has not been met and that it is left uncertain and doubtful in your minds whether the said Emma Morgan was of sound and disposing mind" then you will find for the contestants. This form of instruction is not desirable, as it tends to impose too great a burden on the proponents, although the Court declined to reverse on account of the instruction in Blalock v. Magee, 205 Miss. 209, 38 So. 2d 708.

However, as commented in that case, "because of the risk of error to be incurred in trying to properly phrase an instruction containing such words as being 'left uncertain and doubtful,' we think it would avoid the hazard of reversal instant thereto, in cases where a too close issue of fact is involved, if a contestant in a will case or defendants in other civil cases should be content for their instructions on the burden of proof to go no further than to advise the jury that the proponent or plaintiff is required to establish the issue by a preponderance of the evidence."

Appellants say the court should have permitted Mattie Wallace to testify in rebuttal of testimony that she was not at Emma Morgan's house on the day the will was executed. ██ ██ This witness, being a claimant against the estate under the will, could not testify to establish her claim. Sec. 1690, Code of 1942; Helm v. Sheeks, 116 Miss. 726, 77 So. 820.

It is also argued by appellants that it was error to permit the witness Hugh Thompson to be recalled by the contestants in rebuttal after the proponents had rested their case in rebuttal. It is asserted that the testimony of Thompson in proof of an extrajudicial statement made by the witness Sam Corley was incompetent, because Corley admitted the signing of the written statement. The circumstances involved were that on the cross-examination of Sam Corley by the contestants, he had freely admitted that he signed the statement which was contradictory of his testimony at the trial, but he explained that the reason he signed it was that he was afraid of the two men (Hugh Thompson and an attorney) who were present and asked for the statement, and that he did not understand it. ██ ██ The rule is that upon the impeachment of a witness by showing that he has made statements contrary to his testimony, if the witness admits making the statements, it is not permissible to introduce affirmative proof of that which he has so admitted. 58 Am. Jur., Witnesses, Sec. 780, p. 429; Magness

v. State, 106 Miss. 195, 63 So. 352. ██ However, in the case at bar, when the objection was made to the rebuttal testimony of Thompson, the chancellor admitted the testimony only "to the extent that it may impeach this witness as to whether he knew what he was signing at the time." We think it was proper to permit the witness Thompson to testify as to the circumstances surrounding the execution of the statement in rebuttal of Sam Corley's explanation of why he signed it when, according to him, it was not true. This is not the same thing as proving the signing of the statement, which Corley had freely admitted that he did. Of course, ██ the statement which Corley had signed was not substantive evidence of the facts therein stated, but was merely a matter of impeachment of Corley's testimony to the contrary. 58 Am. Jur., Witnesses, Sec. 770, p. 421.

For reasons which are set out in this opinion, it is necessary that this case be reversed and sent back for another trial of the issues.

Reversed and remanded.

*Roberds, P. J.,* and *Lee, Kyle,* and *Ethridge, JJ.,* concur.