Oliver L. BERRY, Appellant,

v.

**The MONONGAHELA CONNECTING RAILROAD COMPANY,**
a corporation.

**No. 16648.**

United States Court of Appeals
Third Circuit.

Argued Dec. 8, 1967.

Decided June 25, 1968.

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa. (Robert B. Ivory, Pittsburgh, Pa., on the brief), for appellant.

Joseph A. Katarincic, Kirkpatrick, Pomeroy, Lockhart & Johnson, Pittsburgh, Pa. (T. Lawrence Palmer, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, KALODNER and SEITZ, Circuit Judges.

KALODNER, Circuit Judge.

In the instant case the jury awarded the plaintiff damages of $5,000 in his Federal Employers' Liability Act[1] suit against the defendant.

On this appeal from the judgment entered pursuant to the jury's verdict, plaintiff contends that his recovery was prejudicially affected by reason of erroneous trial rulings.

Necessary to our disposition is this summarization of the testimony adduced at the trial insofar as it related to the issue of liability:

Plaintiff testified that while pursuing his duties as an electrician in defendant's railroad yard in Pittsburgh, Pennsylvania, at 3:30 A.M. July 18, 1964, he was struck by defendant's locomotive, known as the "700" which was proceeding west on the westbound tracks; he was thrown against one McCorkle, a fellow electrician and both went down; he saw no lights coming from the "700" and its bell was not ringing nor was a whistle sounded. McCorkle's testimony corroborated that of plaintiff in all respects. Caldwell, conductor of the "700" testified that it was proceeding on the westbound track; neither bell nor whistle were sounded at the time of the accident, and he didn't

1. 45 U.S.C.A. §§ 51–60.

know whether the engine's lights were on.

Defendant's witnesses presented varying versions on the score of the liability issue: Pook, a trackwalker, testified he saw the "700" proceeding west on the westbound tracks "pushing" plaintiff; he couldn't say whether its headlight was on or off; he didn't hear a bell or whistle. McCann, fireman on the "700" testified it was proceeding west on the eastbound track with its headlight on and bell ringing and it never struck plaintiff. Weber, a brakeman on another train, corroborated McCann's testimony in every respect.

On Weber's cross-examination he was confronted with a signed statement he gave to plaintiff's counsel on August 14, 1965,[2] in which he stated in relevant part:

"At no time did I see the head-lights of any engine moving west on either the east bound or the west bound track * * * Our train had just started to move west when I heard another engine crack and a head light came on. At this time I saw the two electricians falling to the ground * * * As the 700 passed me I saw the fireman in the seat box. It appeared to me as if he might have dozed off * * * I ran to get first-aid equipment for the injured men. I also tried to get to a phone to report the accident. A little later I helped the injured men on our engine and we took them to the Farm Yard where an ambulance took them for medical attention. I am still at a loss as to where the 700 came from as I could not see any head light as we were laying at the block".

On confrontation with this statement, Weber repudiated it, asserting that he was "hammered" (intoxicated) when it was obtained. In response to questions put to him by counsel for both parties and the Court, he testified that E. J. Moore, plaintiff's counsel's investigator,

and Socks Covell, an officer of plaintiff's union, bought him drinks at a bar; that after he became intoxicated, Covell took him to plaintiff's counsel's office where the statement was taken by either the latter or Moore, that his condition was such that plaintiff's counsel must have known that he was intoxicated; that the statement was not in his own words, but was composed by someone else; that he did not know what he had signed; that after he read it, he said it was wrong; and that he did not remember whether he read it over before he signed it.

Weber also testified that while he was at plaintiff's counsel's office, "this group" (apparently plaintiff's counsel and Moore) made arrangements to institute a law suit in his behalf; that such suit was in fact later filed, and then withdrawn, because Weber "realized it was too trivial".

When plaintiff sought to have Moore testify in rebuttal of Weber's testimony concerning the circumstances under which Weber's statement was taken, the trial court summarily refused to allow Moore to do so, on the ground that "It's collateral entirely to a collateral matter". An exception to the denial was taken by plaintiff.

We are of the opinion that the District Court's refusal to permit the rebuttal testimony of Moore was prejudicial error.

Where a witness seeks to explain away his prior statement, contradictory of his trial testimony, on the grounds that it was obtained by improper conduct of the one to whom it was given, or under circumstances which established that the witness was "incompetent" at the time, rebuttal testimony is admissible as to the circumstances attending the execution of the statement.

In People v. Underwood, 61 Cal.2d 113, 37 Cal.Rptr. 313, 389 P.2d 937 (1964), it was held that the testimony of a witness that his statement had been

2. The trial took place in March, 1967.

obtained by improper police pressures may be rebutted.

In United States v. Bentvena, 319 F. 2d 916, 941 (2 Cir. 1963), cert. den. sub nom. Ormento v. United States, 375 U. S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271, it was held that an Assistant United States Attorney could testify "to rebut serious accusations against the Government officer trying the case which, if left unanswered, might have seriously prejudiced the Government".

In Wallace v. Harrison, 218 Miss. 153, 65 So.2d 456, 460 (1953), where a witness on cross-examination admitted that he had signed a statement contradictory of his testimony at the trial, but explained that he signed such statement through fear of the attorney and another individual to whom it was given, it was held that rebuttal testimony was admissible as to circumstances surrounding the execution of the statement.

In Pueblo Electric St. Ry. Co. v. Sherman, 25 Colo. 114, 53 P. 322, 325–326 (1898) it was held that proffered rebuttal evidence was admissible to contradict testimony that a statement was made while under the influence of drugs and that "It was error for the trial court to refuse the offer * * * to introduce the proposed evidence".

■ When rebuttal testimony goes to the truth of what a witness has said "in matters crucial or material to the issues on trial, by no process of reason can it be held 'collateral' ", Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633, 641 (D.C. 1942), cert. den. 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1943), rehearing den. 318 U.S. 803, 63 S.Ct. 991, 87 L.Ed. 1167.

Weber was a material witness in this case. His critical testimony that plaintiff was not even struck by defendant's locomotive and that defendant was not guilty of negligence in any respect, was in flat contradiction of his pre-trial statement, and his attempt to explain the latter away by charging that it was obtained by reprehensible conduct of Moore, an employee of plaintiff's counsel, in plying him with liquor until he was "hammered", and Moore's undertaking to initiate a spurious law suit on his behalf, could well have been of damaging consequence not only to plaintiff's recovery but to the extent of that recovery.

■ On the stated facts, it was prejudicial error to refuse to permit Moore's proffered testimony with respect to the circumstances which preceded and attended the making and signing of Weber's statement.

Our disposition makes it unnecessary to discuss plaintiff's other contentions on this appeal.

For the reasons stated the Judgment of the District Court will be reversed and the cause remanded with directions to grant a new trial and to proceed in accordance with this opinion.

SEITZ, Circuit Judge (concurring).

I agree with the opinion of the court that it was error to refuse to admit the testimony proffered by the plaintiff in an attempt to impugn Weber's testimony. Since the jury nevertheless rendered a verdict for plaintiff, I would here consider the error harmless except for the language of Section 3 of the Federal Employers' Liability Act (45 U. S.C.A. § 53) which provides in pertinent part that contributory negligence is not a bar to recovery by an employee, but the jury may diminish the damages "in proportion to the amount of negligence attributable to such employee * * *."

Plaintiff's contributory negligence was clearly in issue in the case. A portion of the evidence relied upon by the defendant in its attempt to prove such negligence was the testimony of Weber. The evidence which was erroneously excluded went directly to the trustworthiness of Weber's testimony. Its exclusion may have influenced the jury in its consideration of the issue of contributory negligence. Since the jury returned a general verdict for plaintiff, there is no way to determine whether the amount of the recovery was reduced by the jury because it felt plaintiff was

guilty of contributory negligence. Since the error as to the admissibility of testimony was both substantial and material, I concur in the judgment of reversal.