520 So.2d 1370 (1988)
In the Matter of the ESTATE OF Jimmie D. EDWARDS, Deceased.
Jerry William EDWARDS, Executor of the Last Will and Testament of Jimmie D. Edwards, Deceased; Jerry William Edwards, Individually; and Jimmie Davis Edwards
v.
Mrs. Loree EDWARDS.
No. 57512.
Supreme Court of Mississippi.
March 2, 1988.
*1371 Morris C. Phillips, Jr., Wright & Phillips, Carthage, for appellant.
James E. Smith, Jr., Smith & Smith, Carthage, for appellee.
Before DAN M. LEE, P.J., and PRATHER and GRIFFIN, JJ.
GRIFFIN, Justice, for the court:
This case, involving testamentary capacity, comes to the Court from the Chancery Court of Leake County, which found against a will executed by Jimmie D. Edwards on September 30, 1982. We reverse.
On September 30, 1982, Jimmie D. Edwards drove to his son Jerry's house, asking Jerry to accompany him to the office of an attorney in order to draw a new will. When Jerry suggested Ed Smith, a longtime Leake County practitioner, Jimmie declined, stating that Smith was his wife Loree's attorney; instead, Jimmie drove to the office of another attorney, Harold Davidson, Jimmie's lifelong friend.
Davidson testified that Jimmie "talked like he knew what he was doing and what he wanted," fully aware of his home, vehicle, money and children. Nevertheless, Jimmie's terms for the new will gave Davidson "considerable apprehension," since they excluded Loree, Jimmie's second wife. Though Davidson warned Jimmie of the "possible repercussion," resulting from Loree's exclusion, Jimmie was insistent, telling Davidson that Loree already owned a place of her own as well as other property. In fact, the record indicates that at the time of Jimmie's death, Loree owned a house, eleven and one-half acres of land, plus two certificates of deposit from Unifirst Federal Savings & Loan Associaiton for $23,869, payable to herself or her daughter by a previous marriage, the proceeds of which had come from her first husband.
The new will read in part:
1. I hereby will, devise and bequeath all of the property of every kind, real, personal, or mixed, which I own or own any interest in at the time of my death, to my two children, Jerry William Edwards and Jimmie Davis Edwards, Jr., share and share alike.
2. I am married to Loree M. Edwards, but make no provision for her, because she owns property in her own name which is of greater value than mine.
3. I hereby appoint my son, Jerry William Edwards, as Executor of my will and estate.
This will also expressly revoked a previous will, dated January 17, 1979, which stated in part:
ITEM TWO: I will, devise and bequeath unto my son, Jerry Edwards, my living room suite, and one of my bedroom suites, and two thousand dollars ($2,000.00) in money.
ITEM THREE: I will, devise and bequeath unto my son, Jimmie D. Edwards, Jr., one of my bed room suites (they are both about alike and he and Jerry can agree on which each will take), and two thousand dollars ($2,000.00) in money.
ITEM FOUR: I will, devise and bequeath unto my wife, Letha Loree Edwards, all other property which I own, or own any interest in at the time of my death, except that which I have willed and devised to my two sons, wheresoever and howsoever it may be located, situated and evidenced, and I appoint her as Executrix of my will and estate, and direct that she shall not be required to make bond or other surety in connection therewith, or to make court reports or accounts.
Interestingly, the first and second accountings show the estate possessed of no cash, even leaving the funeral expenses unpaid, though Loree held a certificate of deposit from the Carthage Bank for $20,892.54, payable to herself or her daughter, the proceeds of which had come from Jimmie's retirement plan. There was then no cash for distribution under either will.
Due to the provisions of the new will, and Jimmie's expressed wish that it remain a secret, Davidson refused to act as a witness "in case something did come up."
Leaving Davidson's office, Jimmie and Jerry proceeded to the Carthage Bank, *1372 where Chris Bilbro and Jimmy Woitt witnessed the will's execution. Parenthetically, Jimmie's efforts to change his will may have been linked to conversations between Jimmie, Jerry and Bilbro, assistant vice president of the bank, concerning problems between Jimmie and Loree during this time. At trial, Bilbro testified that he found Jimmie "sane and sober," while Woitt stated that he noticed nothing unusual about the testator. Consistent with the witnesses, Jerry testified that Jimmie's state of mind was "fine." Indeed, the extent of Jimmie's activities on September 30, 1982, are akin to Loree's testimony that Jimmie continued to drive until the latter part of 1983, visiting friends at Mud's Station, and the White Gables Restaurant as well as Harold Davidson at his office.
On December 28, 1983, Jimmie D. Edwards, age sixty-nine, died of cancer. When Jerry Edwards then sought probate, Loree Edwards, previously unaware of the new will's existence, filed suit to contest it, alleging undue influence and a lack of testamentary capacity.
At trial, Loree relied primarily upon the testimony of Jimmie's doctors, who, though not present on September 30, 1982, testified that, based on their previous examinations, Jimmie's mental capacity would have been substantially impaired by that date. For example, in February, 1981, Dr. Richard Naef diagnosed organic brain syndrome characterized by atrophy of the brain's cortex affecting Jimmie's ability to "reason, make judgments." On June 8, 1982, Dr. Thomas Stevens, noting Jimmie's "chronic mental problems" diagnosed presenile dementia, or Alzheimer's disease. Dr. Clinton Wallace, similarly noting the "progressive deterioration of this type of disease," stated that by September 1982, Jimmie's "judgment would have been poor... ." Concurring, Dr. Naef testified that at the time of the will's execution, Jimmie would have been "significantly impaired," lacking testamentary capacity. In addition, Loree stated that by late 1981, Jimmie at times wouldn't know her, his house, where he was, or the time of day.
Based on these facts, the chancellor found no evidence of undue influence, though he invalidated the September 30, 1982 will due to a lack of testamentary capacity, especially noting Dr. Naef's testimony concerning Jimmie's mental condition the previous year and the progressive nature of his illness.
Consistently, this Court has held that the test of one's capacity to execute a will "is the ability of the testator at the time to understand and appreciate the nature and effect of his act, the natural objects or persons to receive his bounty, and their relation to him, and is capable of determining what disposition he desires to make of his property." Humes v. Krauss, 221 Miss. 301, 310, 72 So.2d 737, 739 (1954). See also, Young v. Martin, 239 Miss. 861, 871-2, 125 So.2d 734, 738 (1961); Wallace v. Harrison, 218 Miss. 153, 164, 65 So.2d 456, 459-60 (1953); Cowart v. Cowart, 211 Miss. 459, 462, 51 So.2d 775, 776 (1951); Fortenberry v. Herrington, 188 Miss. 735, 746-7, 196 So. 232, 236 (1940); Moore v. Parks, 122 Miss. 301, 334, 84 So. 230, 238 (1920).[1] Such capacity "is to be tested as of the date of the execution of the will." Scally v. Wardlaw, 123 Miss. 857, 878, 86 So. 625, 626 (1920). See also, Lee v. Lee, 337 So.2d 713, 714 (Miss. 1976); In Re Will of McGough, 222 So.2d 673, 675 (Miss. 1969).
At trial, the will's proponents carry the burden of proof, which they meet "by the offering and receipt into evidence of *1373 the will and the record of probate. A prima facie case is made by the proponent solely by this proof." Harris v. Sellers, 446 So.2d 1012, 1014 (Miss. 1984). Afterwards, although the burden of proof remains on the proponents, the burden of going forward with proof of testamentary incapacity shifts to the contestants, who must overcome the prima facie case. The proponents may then present rebuttal proof if necessary. Id. See also, Matter of Launius, 507 So.2d 27, 29-30 (Miss. 1987); Gathings v. Howard, 122 Miss. 355, 375, 84 So. 240, 243 (1920); Sheehan v. Kearney, 82 Miss. 688, 702, 21 So. 41, 46 (1896). In short, the proponents must prove the testator's testamentary capacity by a preponderance of the evidence. Genna v. Harrington, 254 So.2d 525, 529 (Miss. 1971); Blalock v. Magee, 205 Miss. 209, 251, 38 So.2d 708, 714 (1949); King v. Rowan, 82 Miss. 1, 15, 34 So. 325, 327 (Miss. 1903).
Previously, this Court has held that the testimony of subscribing witnesses is entitled to greater weight than the testimony of witnesses who were not present at the time of the will's execution or did not see the testator on the day of the will's execution. Brock v. Luckett's Executors, 5 Miss. (4 Howard) 459, 482 (1840). See also, Webster v. Kennebrew, 443 So.2d 850, 859 (Miss. 1983), Smith v. Young, 134 Miss. 738, 766, 99 So. 370, 375 (1924). In fact, the subscribing witnesses to a will may testify as experts on the question of testamentary capacity. Fortenberry v. Herrington, 188 Miss. 735, 747, 196 So. 232, 236 (1940). See also, Webster, 443 So.2d at 859, Ward v. Ward, 124 Miss. 697, 708, 87 So. 153, 155 (1921).
The chancellor made no finding as to the truthfulness or accuracy of the attesting witnesses or any of the other witnesses who saw the testator on the date the will was executed. Here Chris Bilbro testified that he spoke with Jimmie approximately fifteen to twenty minutes while awaiting Woitt, finding him "sane and sober," an oblique reference to Jimmie's drinking problem, while Woitt testified that he found Jimmie's appearance and conduct unremarkable. Similarly, Jerry Edwards and Harold Davidson, who also saw Jimmie on September 30, 1982, testified either that his state of mind was "fine" or that he "talked like he knew what he was doing and what he wanted."
Drs. Naef, Stevens and Wallace, however, were not present on September 30, 1982. Indeed, the record indicates that Dr. Naef, whom the chancellor quoted regarding Jimmie's lack of testamentary capacity, had last seen him on March 4, 1981; Dr. Stevens on June 8, 1982 and Dr. Wallace on September 22, 1981. Equally important, there was no predicate for Dr. Naef's testimony concerning testamentary capacity; consequently, it is unclear that Dr. Naef properly understood the legal term "testamentary capacity."
Finally, whether Jimmie D. Edwards possessed testamentary capacity when attended by his physicians months before the will's execution, is irrelevant to the issue before us; rather, we are concerned with his testamentary capacity on September 30, 1982. Recognizing that a testator may not always possess testamentary capacity, we have held that he may nevertheless execute a valid will during a lucid interval. Lee v. Lee, 337 So.2d 713, 715 (Miss. 1976); Gholson v. Peters, 180 Miss. 256, 267, 176 So. 605, 606 (1937); Lum v. Lasch, 93 Miss. 81, 87, 46 So. 559 (1908).
The evidence is overwhelming that Jimmie enjoyed the requisite testamentary capacity on September 30, 1982, when he drove to Jerry's house with the intent to make a new will, selected the lawyer, dictated the terms of the will, though warned of the repercussions, and accompanied his son to the local bank, visiting in a sane and sober manner with one of the subscribing witnesses for fifteen minutes prior to the will's execution.
Finding manifest error, we reverse, upholding the will of Jimmie D. Edwards dated September 30, 1982, and remand to the Chancery Court of Leake County for proceedings consistent with this decision.
REVERSED AND REMANDED.
*1374 ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
NOTES
[1] Miss. Code Ann. § 91-5-1 (Supp. 1987) reads:

Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix. (emphasis added)