BRIDGES, J.,
for the court.
¶ 1. This is an appeal of a will contest from the Chancery Court of Attala County. The proponents of the will were co-executors of the estate, George M. Booker (Booker) and Lamar Townsend (Townsend). The contestant is Catherine Adair Noah New (New). New alleged that the testator lacked testamentary capacity at *744 the time the will was executed; that the testator was unduly influenced by Booker and Townsend. She also claimed that a confidential relationship existed between the testator, Booker and Townsend.
¶ 2. A bench trial was conducted and the chancellor found for the proponents. New now appeals to this Court.
STATEMENT OF THE ISSUES
I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE TESTATOR HAD THE REQUISITE TESTAMENTARY CAPACITY TO EXECUTE THE WILL.
II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT A CONFIDENTIAL RELATIONSHIP DID NOT EXIST BETWEEN THE TESTATOR AND GEORGE BOOKER; AND THE TESTATOR AND LAMAR TOWNSEND ON THE DATE OF THE EXECUTION OF THE WILL, WHICH RESULTED IN THE WILL BEING A PRODUCT OF UNDUE INFLUENCE.
III. WHETHER THE PROPONENT HAS OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE BY CLEAR AND CONVINCING EVIDENCE, IF THE CONTESTANTS ESTABLISHED SUCH A PRESUMPTION.
IV. WHETHER THE CHANCELLOR ERRED IN ADMITTING CERTAIN TESTIMONY OF THE ATTORNEY WHO DRAFTED THE WILL AND REPRESENTED THE ESTATE.
FACTS
¶ 3. After suffering from medical problems and receiving medical testing, Guy Bascombe Garrett, Jr. (decedent or testator) was notified by the veteran’s hospital that he had multiple mass lesions and needed further testing immediately. He was diagnosed with pancreatic cancer on October 26, 1999. Soon after, he met with attorney Billy Gilmore. After discussing his wishes and options in meeting those wishes in connection with a will, the decedent went to the hospital for further treatment and testing. He was discharged from the hospital and met again with Billy Gilmore to discuss the will and made several additions and changes. Certain personal property and two city lots were left to non-family members while other personal property was left to one of the decedent’s heirs at law. The majority of his estate, including approximately 1300 acres of timber land, certificates of deposit, bank accounts, stocks and bonds, were left in trust for his heirs at law with the corpus of said trust to be paid to the children of said heirs. The will was executed on November 22, 1999. After his death in August 2000, the testator’s last will and testament was admitted to probate in the Chancery Court of Attala County, Mississippi. Immediately following, a will contest was initiated by New. At trial, New alleged that the testator did not have testamentary capacity or, in the alternative, that the testator was unduly influenced. The chancellor held that the testator did have testamentary capacity on the date the will was executed. Also, the chancellor ruled the testator did not hold a confidential relationship with either Booker or Townsend and that, even if such relationship existed, the will was not a product of undue influence because the proponents overcame the presumption of undue influence.
STANDARD OF REVIEW
¶ 4. The Supreme Court of Mississippi has held that “[a] chancellor’s findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous, or unless the chancellor applied an erroneous *745 legal standard.” Wright v. Roberts, 797 So.2d 992(¶ 14) (Miss.2001). This Court will not reverse unless the chancellor’s findings are not supported by substantial credible evidence in the record. Id.
ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT THE TESTATOR HAD THE REQUISITE TESTAMENTARY CAPACITY TO EXECUTE THE WILL.
¶ 5. In re Last Will and Testament and Estate of Smith, gives a three part test that is used to determine testamentary capacity:
1. Did the testatrix have the ability at the time of the will to understand and appreciate the effects of her act? 2. Did the testatrix have the ability at the time of the will to understand the natural objects or persons to receive her bounty and their relation to her? 3. Was the testatrix capable of determining at the time of the will what disposition she desired to make of her property?
In re Last Will and Testament and Estate of Smith, 722 So.2d 606, 610(¶ 12) (Miss.1998). The day the will is executed is the day for determining capacity. Id.
¶ 6. Discussing part one of the Smith test, the chancellor found that Garrett did have testamentary capacity to execute his will. On appeal, New argues that Garrett did not have testamentary capacity the day the will was executed. Her basis for this claim is mainly the state of his medical condition. On the day the will was executed, November 22, 1999, Garrett went to Billy Gilmore’s office. Although Garrett was suffering from cancer and was taking medication, Gilmore determined Garrett did have capacity to execute his will. Gilmore was the only witness who testified as to Garrett’s capacity on the day of the will’s execution. He testified that Garrett showed no signs of incapacitation.
¶ 7. Billy Gilmore had known Garrett for at least eight years prior to this day not only as a client but also as a surveyor. Gilmore testified that he had discussed this will with Garrett at least three times. On November 22, 1999, he had prepared a first draft and the final will was signed with changes added by Garrett. These conversations were only between the two of them in Gilmore’s law office but Gilmore testified that if Garrett had appeared to be incompetent, he would not have allowed Garrett to execute the will.
¶ 8. In reference to part two of the Smith test, Garrett knew the natural objects of his bounty and their relationship to him. On November 22, 1999, Billy Gilmore testified that Garrett was able to discuss his relatives and appeared to be just as competent on the day of execution, as he had been during their prior meetings. Garrett mentioned a third generation of his family, and specifically his three first cousins who are named in the will. His three first cousins were his only heirs at law, and in the will were to receive some property in addition to being beneficiaries to a trust. The remainder of this trust was left to the children of these cousins. In addition to his devise to his cousins, Garrett also left property to his close personal friends, Townsend and Booker, whom he had known for forty and twenty years respectively. Billy Gilmore testified that prior to the execution of the will, the two of them reviewed the will at least three times. Garrett stated that this revised will was exactly what he wanted. Garrett knew and understood the bounty of his will and also was capable of determining how he wanted his property to be disposed.
¶ 9. Some of the questionable circumstances surrounding the will were that *746 Garrett was suffering from cancer on the day the will was executed and he was taking medication. However, his medical records do not demonstrate that he was mentally incapacitated because of his cancer or the medications he was prescribed. Garrett also failed to include some stocks that had belonged to his deceased parents in the will which Garrett had never converted into his own name. There was also a question about a comment made by Cole DeLong, Garrett’s distant cousin, that Townsend said Garret did not have testamentary capacity on the day of the will’s execution. It was never clearly proven that this comment was made but neither Townsend nor DeLong were present at the time the will was executed. Following the Court’s ruling in Edwards v. Edwards, capacity at the time of execution is the only factor. Edwards v. Edwards, 520 So.2d 1370, 1373 (Miss.1988) The testator could have not had testamentary capacity days, weeks or months before as long as he had capacity at that moment. Thus Gilmore’s testimony is the only relevant evidence on the issue.
¶ 10. Finally, as to the third part of the Smith test, Garrett was terminally ill and did not specifically name all of the property that he owned in the will. This does not mean he did not have capacity on the day the will was executed. In fact, the will contained a residual clause that distributed any unnamed property.
¶ 11. Billy Gilmore’s testimony is the only testimony concerning Garrett’s behavior on the crucial date the will was executed. Gilmore believed that Garrett had testamentary capacity. In fact, New’s own witness, Fred DeLong III, testified that Garrett did not show signs of incapacitation when DeLong visited him in the hospital during his cancer treatment. Garrett even continued to survey land until just prior to his death. Garrett left his property to his heirs at law and to close friends whom he had known for many years. Garrett never executed a new will, the one executed on November 22, 1999, was his only will. This document was modified only in an initial draft. The chancellor’s finding that he had testamentary capacity passes the Smith test and we affirm.
II. WHETHER THE CHANCELLOR ERRED IN FINDING THAT A CONFIDENTIAL RELATIONSHIP DID NOT EXIST BETWEEN THE TESTATOR AND GEORGE BOOKER; AND THE TESTATOR AND LAMAR TOWNSEND ON THE DATE OF THE EXECUTION OF THE WILL, WHICH RESULTED IN THE WILL BEING A PRODUCT OF UNDUE INFLUENCE.
III. WHETHER THE PROPONENT HAS OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE BY CLEAR AND CONVINCING EVIDENCE, IF THE CONTESTANTS ESTABLISHED SUCH A PRESUMPTION.
¶ 12. The contestant of the probated will has the burden of establishing that there is a confidential relationship between the testator and the beneficiary. Norris v. Norris, 498 So.2d 809, 813 (Miss.1986). Hendricks v. James describes a confidential relationship as:
Whenever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter’s dependency upon the former, arising either from weakness of mind or body, or through trust, the law does not hesitate to characterize such relationship as fiduciary in character.
Hendricks v. James, 421 So.2d 1031, 1041 (Miss.1982). Many factors are used to de *747 termine if there was a confidential relationship. These factors are as follows:
(1) whether one person has to be taken care of by others,
(2) whether one person maintains a close relationship with another,
(3) whether one person is provided transportation and has their medical care provided for by another,
(4) whether one person maintains joint accounts with another,
(5) whether one is physically or mentally weak,
(6) whether one is of advanced age or poor health, and
(7) whether there exists a power of attorney between the one and another.
In re Estate of Dabney, 740 So.2d 915, 919(¶ 12) (Miss.1999). New claims there was a confidential relationship between Garrett and Booker and also between Garrett and Townsend. The chancellor found that the relationship Garrett had with both Booker and Townsend was that of close friendships. The chancellor also pointed out that most will contest cases concerning confidential relationships are based on individuals who manage the testators business affairs, have durable power of attorney over the testator’s affairs, have written checks for the testator or who have a joint back account with the testator. Booker and Townsend never had this kind of fiduciary relationship with Garrett.
¶ 13. Garrett was a single man with no children or immediate family. Garrett had known Booker for approximately twenty years prior to his death and Townsend for about forty years. Neither Booker nor Townsend appeared to have had any dominant relationship over Garrett. His finances were not controlled or assisted by either Booker or Townsend; in fact, Garrett payed all of his bills himself. Booker occasionally delivered checks for Garrett but Garrett was the one who always signed for the payment. Booker would occasionally accompany Garrett on surveying jobs but they were not in business together. Booker would also drive him to the doctor and take him other places, but driving Garrett was something Booker had done since 1995. None of these things appear to be beyond what any friend of twenty years would do.
¶ 14. Townsend owned an apartment that was located behind his business. When Garrett was released from the hospital in early November 1999, Townsend offered this furnished apartment to Garrett. Townsend also prepared meals for Garrett while he lived in the apartment. He too would drive Garrett to where he needed to go. Although this may give the appearance of a confidential relationship it does not automatically mean Townsend was in a position of dominance over Garrett. The two men had been friends for almost forty years and Garrett did not have a wife or children to go home to after his release from the hospital. Townsend did what any lifelong friend would do for someone with cancer and no immediate family. The chancellor found no evidence of undue influence in the relationship between Townsend and Garrett and deference should be given to his findings of fact.
¶ 15. In evaluating the factors of Dab-ney, Garrett was not totally dependent on either Townsend or Booker. He did have a close friendship with both Townsend and Booker and he was provided transportation by Townsend and Booker as he had prior to his illness but he had no joint accounts with Townsend or Booker. Garrett had terminal cancer, but continued working until just prior to his death. None of his medical reports indicated that he was mentally incapacitated. Garrett-was *748 sixty-one years old and was in good health prior to his diagnosis with cancer.
¶ 16. Booker did have medical power of attorney, but it was not used until the final days of Garrett’s life. It is reasonable for Garrett, in light of his diagnosis and lack of an immediate family member, to grant medical power of attorney to a good friend. Even though Garrett had a close relationship Booker and Townsend the chancellor was correct in finding the will was not a product of undue influence.
¶ 17. Whether or not the proponent has overcome the presumption of undue influence need not be addressed since the court properly found the will was not a product of undue influence. The chancellor’s findings on these two issues are affirmed.
IV. WHETHER THE CHANCELLOR ERRED IN ADMITTING CERTAIN TESTIMONY OF THE ATTORNEY WHO DRAFTED THE WILL AND REPRESENTED THE ESTATE.
¶ 18. The standard of review for the admission or exclusion of evidence is abuse of discretion. Tatum v. Barrentine, 797 So.2d 223, 230(¶ 29) (Miss.2001). Billy Gilmore drafted Garrett’s will and was originally the attorney for the Garrett estate. Based on a possible conflict, Gilmore stopped representing the Garrett estate and John Gilmore became the estate’s attorney. Billy Gilmore was a party to this will contest, and represented himself in the contest. Therefore, he had the right to be present in the courtroom during the entire process as a party defendant. Any answers or statements Billy Gilmore uttered during the will contest were on his own behalf, not on behalf of the estate. Since Billy Gilmore was the scrivener of the will and was present on the critical day of the will’s execution, his testimony was crucial to the case. The trial court did not abuse its discretion by allowing Billy Gilmore to testify at trial and its holding is affirmed.
¶ 19. THE JUDGMENT OF THE AT-TALA COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.