## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 96-CA-01190-SCT

*IN RE: LAST WILL AND TESTAMENT AND ESTATE*
*OF MRS. ELIZABETH R. SMITH, DECEASED:*
*DAVID R. SMITH AND MRS. ANNETTE SMITH,*
*HUSBAND AND WIFE*

*v.*

*MRS. JEANETTE AVERILL AND OREN PICKERING*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/96 |
| TRIAL JUDGE: | HON. HYDE RUST JENKINS, II |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DANIEL J. O'BEIRNE |
| ATTORNEY FOR APPELLEES: | J. ANTHONY WILLIAMS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | AFFIRMED - 10/22/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/12/98 |

**BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On December 16, 1994, the Last Will and Testament of Mrs. Elizabeth R. Smith was admitted to probate in Adams County, Mississippi. Jeanette Averill and Oren Pickering, the sole surviving heirs at law of the testatrix, filed their petition to contest probate of will and for accounting on February 2, 1995. They contend that the testatrix, Mrs. Elizabeth R. Smith, lacked testamentary capacity and was unduly influenced by either David R. Smith, his wife Annette Smith, or both. On August 29, 1996, a jury in Adams County, Mississippi, entered a unanimous verdict in favor of Averill and Pickering. Aggrieved, David R. Smith and his wife, Annette Smith, bring this appeal assigning the following issues as error:

**I. WHETHER THE CHANCERY COURT ERRED IN RESERVING RULING ON THE SMITHS' MOTION IN LIMINE ON THE ISSUE OF WILL SUBSTITUTES AND ALLOWING AMENDMENT BY AVERILL AND PICKERING ON THIS ISSUE.**

**II. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.**

**III. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTIONS FOR A DIRECTED VERDICT ON THE ISSUES OF TESTAMENTARY CAPACITY AND UNDUE INFLUENCE.**

**IV. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE MOTION FOR A NEW TRIAL.**

**V. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WILL SUBSTITUTES AND RIGHTS OF SURVIVORSHIP.**

**VI. WHETHER THE CHANCELLOR ERRED IN OBJECTING FROM THE BENCH TO THE TESTIMONY OF DANIEL J. O'BEIRNE.**

Jeanette Averill and Oren Pickering cross-appeal raising the following issue:

**WHETHER THE CHANCERY COURT ERRED IN HOLDING THAT THE JOINT BANK ACCOUNTS PASSED OUTSIDE THE ESTATE AND WERE NOT PART OF THE WILL CONTEST.**

## STATEMENT OF THE FACTS

¶2. The testatrix, Mrs. Elizabeth R. Smith lived on Springfield Road in a mobile home on the property of her daughter, Jeanette Averill, until late May or early June 1994. She moved her trailer to Morgantown Road around June 1994 and died December 11, 1994, after signing an instrument titled "Last Will and Testament" in September 1994. This instrument purported to convey the entire estate of the testatrix to David R. Smith Sr., the nephew of the testatrix by marriage, and his wife, Annette Smith. This conveyance expressly excluded Jeanette Averill and Oren Pickering, the testatrix's children by a prior marriage and the sole heirs at law of the testatrix. A residuary clause provided that if both David R. Smith Sr., and wife, Annette Smith, predeceased the testatrix the estate should go in trust to four named great nephews. This instrument recited that it revoked all prior wills, specifically providing for revocation of a will dated May 23, 1993. There were at least two prior wills including the one dated May 23, 1993, and one dated June 29, 1994. The will in contest was created by changing certain provisions in the will dated June 29, 1994.

¶3. The testatrix had two bank accounts at Britton and Koontz First National Bank. One account was designated a N.O.W. account and the other a M.M.A. account. The testatrix initially listed Jeanette Averill on both accounts as a joint tenant with rights of survivorship. Prior to June 1994, the testatrix took Jeanette Averill's name off these accounts and instead added David R. Smith Sr., as a joint tenant with rights of survivorship. In June 1994, the testatrix executed a power of attorney in favor of David R. Smith Sr. Averill and Pickering contested the probate of the latest will upon learning the testatrix had excluded them from inheriting and had left her entire estate to the Smiths.

# I. WHETHER THE CHANCERY COURT ERRED IN RESERVING RULING ON THE SMITHS' MOTION IN LIMINE ON THE ISSUE OF WILL SUBSTITUTES AND ALLOWING AMENDMENT BY AVERILL AND PICKERING ON THIS ISSUE.

## A. Motion in Limine

¶4. A trial judge enjoys wide discretion with regard to the relevancy and admissibility of evidence. *Fisher v. State,* 690 So.2d 268, 274 (Miss. 1996). The Court will not reverse the ruling of the trial judge unless the judge commits an abuse of discretion which prejudices the party bringing the motion. *Fisher*, 690 So.2d at 274.

¶5. The Smiths made a motion in limine to exclude any mention of the joint accounts of the testatrix. They claim the accounts, as will substitutes, pass outside of the will and should be no part of this will contest. On Friday, before the will contest began Monday, the chancellor discussed his decision regarding the motion in limine:

> It would seem to me that I have ruled that this case today [there] will be one issue decided, the issue [of] whether this Will is good or bad. It is either good or it is bad by reason of undue influence or lack of capacity. . . . I think that there can be evidence . . . [that] when this bank account was opened that they took her down there and they did this and they did that . . . . I think that is relevant and probative . . . .

The chancellor bifurcated the will substitutes issue and reserved ruling on that issue until necessary. The chancellor ruled that in the will contest there should be no mention of rights of survivorship on the bank accounts. He limited any mention of the accounts to evidence of a confidential relationship to prove undue influence. The Smiths suffered no prejudice because of the chancellor's ruling and there was no error.

## B. Amendment To Pleadings

¶6. While the chancellor granted the Smiths' motion in limine in this portion of the trial, one issue remains. Should the chancellor have ordered bifurcation of the trial and allowed amendment to the pleadings? The Smiths assert that the chancellor should not have allowed an amendment since Averill and Pickering made no motion seeking amendment of the pleadings. In fact, appellees made no argument that they should be allowed to amend even on the Friday the chancellor discussed his ruling.

¶7. Counsel for the Smiths alleged the issue of the joint bank accounts had not been specifically pled. In response, counsel for the appellees said, "Well, it's not. It says that she was without capacity to make the will and there was undue influence in the execution of the will. The cases don't make that distinction."

¶8. Mississippi Rule of Civil Procedure 15 governs amendment to pleadings and recites: "[L]eave shall be freely given when justice so requires." M.R.C.P. 15(a). This Court reviews the decision to allow amendment under an abuse of discretion standard. *Church v. Massey*, 697 So.2d 407, 413 (Miss. 1997). We have held that unless we are convinced there was an abuse of discretion by the trial judge, we have no authority to reverse. *Id.* Additionally, we have ruled, "The court is to be liberal in

granting permission to amend when justice so requires." ***Shipley v. Ferguson,*** 638 So.2d 1295, 1300 (Miss. 1994)(quoting M.R.C.P. 15(b)).

¶9. The trial court's decision to bifurcate the issue of will substitutes gives the Smiths additional time to prepare their case. The Smiths cite no prejudice which resulted from the chancery court's decision, and we find no error in allowing amendment.

### CROSS - APPEAL:

### WHETHER THE CHANCERY COURT ERRED IN HOLDING THAT THE JOINT BANK ACCOUNTS PASSED OUTSIDE THE ESTATE AND WERE NOT PART OF THE WILL CONTEST.

¶10. In their cross-appeal, Averill and Pickering suggest the issue of will substitutes should have been included in the original will contest and not heard separately. We need not reach the validity of the chancellor's decision since the order granting a separate trial is not appealable as a final judgment. M.R.C.P. 42(b) cmt; *See* 9 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure,* §2392 2d ed.(1995).  This assignment of error is not properly before the Court.

## II. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

## III. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTIONS FOR A DIRECTED VERDICT ON THE ISSUES OF TESTAMENTARY CAPACITY AND UNDUE INFLUENCE.

## IV. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR IN THE ALTERNATIVE MOTION FOR A NEW TRIAL.

¶11. The second, third and fourth assignments of error are addressed together as the same facts are applicable to all three issues. Proof of testamentary capacity and undue influence forms the basis of the Smiths' assignments of error.

### A. Testamentary Capacity

¶12. Did the chancery court err in allowing the jury to decide the question of testamentary capacity? A determination of testamentary capacity is based on three factors:

1. Did the testatrix have the ability at the time of the will to understand and appreciate the effects of her act?

2. Did the testatrix have the ability at the time of the will to understand the natural objects or persons to receive her bounty and their relation to her?

3. Was the testatrix capable of determining at the time of the will what disposition she desired to make of her property?

*Gallaspy v. Gallaspy*, 562 So.2d 74, 77 (Miss. 1990); *Edwards v. Edwards*, 520 So.2d 1370, 1372 (Miss. 1988).

¶13. The proponents of the will must meet their burden of proof "by the offering and receipt into evidence of the will and the record of probate." *Edwards*, 520 So.2d at 1372-73 (quoting *Harris v. Sellers*, 446 So. 2d 1012, 1014 (Miss. 1984)). A prima facie case is made by the proponent solely on his proof. *Id.* at 1373. When this burden of proof has been met, the burden of going forward shifts to the contestants to overcome the prima facie case. *Id.* at 1373. However, the burden of proof remains with the proponent to show by a preponderance of the evidence that the testator had capacity. *Id.* After the contestants have attempted to rebut the prima facie case, the proponents may come forward with additional proof in rebuttal. *Id.* When weighing all the testimony, this Court has held that it is easiest for subscribing witnesses to tip the scales toward capacity. *Webster v. Kennebrew*, 443 So.2d 850, 859 (Miss. 1983). This Court has also recognized that although a testator may not possess capacity one day, the next week he may have a lucid interval in which he has the capacity to execute a valid will. *Edwards*, 520 So.2d at 1373. Therefore, testimony regarding capacity from witnesses who have not seen the testator in months will be deemed irrelevant by the Court. *Id.* The date of execution is of utmost import. *Id.*

¶14. In the instant case, the appellants made a prima facie case on the issue of testamentary capacity. Attempts to rebut this evidence yielded several witnesses. Appellees claim that decedent did not have the ability to understand or appreciate the nature of her act of making a will since the family members felt she had "lost her wits" in January 1994.

¶15. Because this Court will deem irrelevant any testimony dating back months before the time the will was signed, much of the appellees' proof was too distant to have significant import. However, Oren Pickering says he visited his mother, the testatrix, " an average of four times after she moved out [to Morgantown Road]." His wife, Mary Pickering, testified her husband averaged seeing the testatrix three to four times a year. When visiting after his mother's move, Pickering testified it often took his mother a minute to recognize him. Jeanette Averill stated that during the same time period the testatrix did not always recognize her or her family. Oren Pickering's wife, Mary Pickering, also testified that after the move she once saw the testatrix give the hairdresser a blank check. She thought that was unusual since the testatrix had always been very careful with her money. Additionally, David Smith Sr., and his wife, Annette Smith, testified as adverse witnesses that they were taking care of the testatrix's finances and that she executed a power of attorney in favor of David Smith Sr.

¶16. The testatrix moved almost four months before the execution of the will in issue. These pieces of testimony relate to that four month period and are probative of the testatrix's specific ability at the time the will was signed to understand and appreciate the effects of her act, to understand the objects or persons to receive her bounty, and to determine the disposition of her property.

¶17. This Court conducts a de novo review of motions for directed verdict. *Northern Elect. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995). When the Court finds upon considering all the evidence favorable to the non-moving party and any reasonable inferences that can be drawn from this evidence a question for the jury is presented, the Court will not grant this motion. *Id.* The trial court should only submit an issue to the jury when the evidence creates a question of fact over which

reasonable jurors could disagree. *Vines v. Windham*, 606 So.2d 128, 131 (Miss. 1992). In the instant case, there were questions of fact relating to the testatrix's capacity over which reasonable jurors could disagree. The contrasting accounts of the testatrix's mental state and the credibility of each account was weighed by the jury. The chancellor did not abuse his discretion.

## B. Undue Influence

¶18. Appellants next contend the chancery court erred in denying their motion for a directed verdict on the matter of undue influence. A presumption of undue influence arises in a will contest when a beneficiary occupies a confidential relationship with the testator and there is active participation by the beneficiary in either procuring the will or in preparing the will. *Simm v. Adams*, 529 So.2d 611, 615 (Miss. 1988). Suspicious circumstances surrounding the creation of the will also raise the presumption. *Pallatin v. Jones*, 638 So.2d 493, 495 (Miss. 1994). However, we held the test was satisfied and the presumption was raised in *In re Estate of Harris*, 539 So.2d 1040 (Miss. 1989), with very little besides a confidential relationship. *Harris*, 539 So.2d at 1041. The beneficiary simply found an attorney at the testator's request and drove the testator to the attorney's office. *Id.*

¶19. It is clear there was a confidential relationship between the testatrix and the Smiths. The testatrix was dependent on the Smiths, they controlled her finances, and she executed a power of attorney in favor of David Smith Sr. Annette Smith testified "we were her legs". It is undisputed that the testatrix initiated contact with Daniel O'Beirne when she called for an appointment in June 1994, and again when she wrote Mr. O'Beirne that she had changes to make and detailed them. However, David Smith drove her to Mr. O'Beirne's office and sat in the lobby while she executed the will in contest here.

¶20. The appellees argue that it was suspicious that the testatrix changed the alternate beneficiaries in the last will to the grand-nephews instead of the Shriner's hospital since they contend she hardly knew these nephews. They also contend it is suspicious that David Smith looked at the will on the way out of Mr. O'Beirne's office. These are not the types of suspicious circumstances contemplated by this Court. We described a situation where the beneficiary was stepping in and out of the room at the time of execution as suspicious. *Pallatin*, 638 So.2d at 495. The evidence offered by Averill and Pickering instead tends to show the testatrix's changes were unnatural. Averill and Pickering tried to show that a mother would not disinherit her children in favor of her nephew by marriage and his family. However, this is not the proper consideration. Even if the changes were unnatural, this is not the proper basis for a finding of undue influence. *Wallace v. Harrison,* 218 Miss. 153,163, 65 So.2d 456, 459 (1953).

¶21. However, Averill and Pickering presented ample evidence of the testatrix's mental infirmity and dependence upon the Smiths. When considered with David Smith's participation in taking the testatrix to Mr. O'Beirne's office, the presumption of undue influence arises.

¶22. To overcome this presumption of undue influence, the Smiths were required to prove the following by clear and convincing evidence:

1. The beneficiaries must have acted in good faith.

    a. Who initiated the procurement of a will?

b. Where was the will executed and in whose presence?

c. What consideration was paid?

d. Who paid the consideration?

e. Was there secrecy or openness in the execution?

2. The testatrix must have had full knowledge and deliberation in the execution.

a. Was the testatrix aware of her total assets and their general value?

b. Did the testatrix understand who her natural inheritors were?

c. Did the testatrix understand how the change would legally effect prior wills?

d. Did the testatrix know that non-relative beneficiaries would be included?

e. Did the testatrix know who controlled her finances and by what method?

1. How dependent is the testatrix on those handling her finances?

2. How susceptible is she to influence by those handling her finances?

3. The testatrix must have exhibited independent consent and action.

*Pallatin*, 638 So. 2d at 495-97.

¶23. The beneficiaries must have acted in good faith. The testatrix called Daniel O'Beirne in June 1994 to make an appointment and eventually executed the will in dispute here in Mr. O'Beirne's office while David Smith Sr., who carried her to the appointment, sat outside in the lobby. The testatrix paid for Mr. O'Beirne's services with her personal check. Averill and Pickering contend there was secrecy in the execution since they had no knowledge of the execution of the will. However, the actual issue to be addressed is whether the physical place the will was executed was in plain view of the witnesses. *Pallatin*, 638 So.2d at 496. There has been no suggestion that the testatrix was secretive with the attesting witnesses.

¶24. The testatrix must have had full knowledge and deliberation in the execution. Both sides presented conflicting evidence about the testatrix's knowledge of her relatives and the alternate beneficiaries. Additionally, there is strong evidence to suggest that the testatrix did not know a great deal about her finances. It is evident that she relied to a large degree on David and Annette Smith.

¶25. The testatrix must have exhibited independent consent and action. She had the opportunity to consult with a lawyer who was neutral and to discuss what she wished to do with her finances. There is evidence to suggest she was strong willed. She left Jeanette's house, perhaps of her own volition. She also had the names on her joint bank account changed to remove Jeanette. However, Averill and Pickering attribute this behavior to undue influence from the Smiths and cite the testatrix's overriding physical and mental dependence. They refer to her inability to recognize her own family in the last months of her life. The chancery court did not err in refusing to grant a directed verdict for the Smiths since the evidence created a question of fact over which reasonable jurors could disagree.

## C. Judgment Notwithstanding the Verdict and New Trial

¶26. When the trial court has denied a motion for judgment notwithstanding the verdict, we have held:

> We consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith*, 523 So.2d 324, 326 (Miss. 1988).

¶27. It was within the province of the jury to determine what weight to give to the witnesses' testimony. Giving the moving party all the favorable inferences that could be drawn, reasonable jurors could have reached different conclusions as to testamentary capacity and undue influence. We must affirm.

¶28. "A motion for a new trial . . . is addressed to the trial judge's sound discretion." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1177 (Miss. 1990) (citing *Jesco, Inc. v. Whitehead*, 451 So.2d 706, 714-15 (Miss.1984)). In this case, there was ample evidence on which the jury could base its verdict for Averill and Pickering. The chancery court did not abuse its discretion.

## V. WHETHER THE CHANCERY COURT ERRED IN OVERRULING THE SMITHS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF WILL SUBSTITUTES AND RIGHTS OF SURVIVORSHIP.

¶29. The validity of the summary judgment motion denied in the second part of this bifurcated trial is not properly before the court since there has been no final judgment on this issue. Miss. Code Ann. § 11-51-3 (Supp. 1998). For a decree to be appealable under this code section, it must be final as to all parties and all issues. *American Empire Life Ins. Co.*, 291 So.2d 735, 736 (Miss. 1974). Rule 54(b) states:

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . .

> In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims . . . of fewer than all the parties shall not terminate the action . . . and . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.

M.R.C.P. 54(b). This assignment of error is not properly before the Court.

## VI. WHETHER THE CHANCELLOR ERRED IN OBJECTING FROM THE BENCH TO

**THE TESTIMONY OF DANIEL J. O'BEIRNE.**

¶30. The chancellor's remarks when Mr. O'Beirne took the stand create the basis of this assignment of error:

> [JURY RETURNED]
>
> THE COURT: All right, you may call your first witness.
>
> MR. O'BEIRNE: Your honor, as a witness of the Will I will be the first witness.
>
> THE COURT: No, Sir.
>
> MR. O'BEIRNE: I beg your pardon. We've already covered that.
>
> THE COURT: That was about a deposition. Let's go back in my chambers.

The Smiths first cite *Nichols*, a case involving plain error where the trial judge directly questioned witnesses more than once and gave a "quite open display of incredulity before the jury both of the plaintiff's case and of the plaintiff himself." *Nichols v. Munn,* 565 So.2d 1132, 1137 ( Miss. 1990). The second case cited by the appellants involves a trial judge who commented in admitting evidence that the sun would be in driver's eyes at time and place of accident, referring to his own experience in similar circumstances. *Young v. Anderson*, 249 Miss. 539, 163 So.2d 253 (1964).

¶31. The court's comments here consisting of "No." and "That was about a deposition. Let's go back in my chambers." fail to rise to the level of error described in *Nichols* or *Young*. After the conversation in chambers, Mr. O'Beirne was allowed to testify. The chancellor's concern seems to have been over the ethical ramifications of a lawyer testifying in a lawsuit in which he is participating. While we held that a lawyer could serve as an advocate although he was also a witness in *Pittman v. Currie*, 414 So.2d 423, 426-27 (Miss. 1982), it is easy to understand the trial court's concern over this ethical matter. We find no error in the chancellor's comments.

<u>CONCLUSION</u>

¶32. The chancellor did not abuse his discretion in reserving ruling on the appellants' motion in limine nor did he abuse his discretion in allowing amendment and bifurcation as to the issue of will substitutes. There were issues of material fact for the jury to consider and the chancellor properly denied the Smiths' motions for a directed verdict. There was no basis for a grant of a judgment notwithstanding the verdict or a new trial.

¶33. The chancellor's denial of summary judgment on the will substitutes issue cannot be properly addressed since there has been no final judgment in this portion of the trial. Finally, the chancellor's response to the initiation of testimony by Mr. O'Beirne was proper. Therefore, the unanimous verdict of the Adams County jury is affirmed.

¶34. **AFFIRMED ON DIRECT APPEAL. CROSS-APPEAL IS NOT PROPERLY BEFORE THE COURT AND IS DISMISSED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH**

**AND WALLER, JJ., CONCUR.**