293 So.2d 6 (1974)
In the Matter of the ESTATE OF Mrs. Sallie S. BRISCOE, Deceased.
Howard C. BRISCOE et al., Proponents/Appellants,
v.
James Upton BRISCOE et al., Contestants/Appellees.
No. 47438.
Supreme Court of Mississippi.
April 8, 1974.
Hugh L. Bailey, Winona, for proponents/appellants.
J.W. Kellum, Sumner, for contestants/appellees.
PATTERSON, Justice:
This appeal arises from the Chancery Court of the Second Judicial District of Carroll County. There upon an issue of devisavit vel non a jury verdict was returned against the will of Mrs. Sallie S. Briscoe.
The only question submitted to the jury was whether Mrs. Sallie Briscoe was mentally competent to execute the will on March 16, 1964. The jury's verdict was a *7 tacit finding by it that the testatrix was mentally incompetent on the above date and thus unable to make the will. This verdict, presently challenged as being against the overwhelming weight of the evidence, brings into focus all of the evidence and particularly that favorable to the contestants so this Court might determine if the verdict is supported by evidence or reasonable inference, and if so, whether it is overwhelmed by the evidence of the proponents.
The proponents of the will authenticated it and its previous admission to probate by the testimony of the subscribing witnesses. They then rested their case, whereupon the contestants undertook the burden of proving the incapacity of the testatrix.
We note, as did the chancellor, there were two witnesses who testified that Mrs. Briscoe was mentally incompetent on March 16, 1964, the date of the will. Undoubtedly these witnesses were Mrs. Ruby Pullen and Mrs. Bonnie Briscoe, daughters-in-law of the testatrix, whose husbands had preceded their mother in death. They are also the mothers of some of the contestants to the will.
Mrs. Pullen testified that she had known the testatrix for many years and that she was in the family from 1934 when she married Carl Briscoe, until his death in 1960, and thereafter saw Mrs. Briscoe frequently, including the year 1964. She testified that the testatrix died in 1968 at the age of eighty-three. From this we observe the testatrix was seventy-nine years of age at the time the will was executed.
The record unveils the following characteristics of Mrs. Briscoe, as related by Mrs. Pullen:
Her eye sight was poor. She had to wear real thick lens in her glasses for lots of years. Well, she had sort of a light stroke sometime before then and she suffered from headaches and her eyes watered. She was dizzy. She had dizzy spells. She referred to it as having that old crazy feeling in her head. She was dizzy and could not get about too good.
She also stated with regard to the demeanor of the testatrix:
Oh, she watched television a little, a few programs that she liked that she could listen to as well as see, but she didn't  she couldn't read the telephone book very well. The reading that she did, she had to get it up beside a window where it was light enough so that she could get it up close enough to her eyes and read, if it wasn't too small, and the telephone numbers, the ones that she used, she had them written down on a cardboard or a big piece of paper in great big numbers where she could see them whenever she used the telephone.
She was then asked:
Q. Did she ever make any statements to you that were not normal, or you might say incoherent, in her talks to you?
A. Well, yes, there was a time that she was telling me about looking into one of the sitter's[1] things, and that was unusual. She never would have done a thing like that earlier, but she was telling about looking into her things and about how much cosmetics she had. She was just, well, just child like. She was amazed at how much cosmetics the sitter had in her room.
Finally, she was asked:
Q. Would you say, now, on this day that she went up there, that that lady was of sound and disposing mind, or would you say that she was not?
A. She was not.
On cross-examination we note the following testimony:

*8 Q. Did you ever suggest to the family that she was not competent to handle her business, that they should put her under guardianship?
A. No, but they worried about what they were going to do with her. If you love anybody, you do not put them under guardianship unless you are forced to. I did not say that she was crazy.
Q. You said that she was of unsound mind to handle her business.
A. She was the day that I saw her.
Mrs. Bonnie Briscoe testified that she was a frequent visitor in the home of the testatrix, including the year 1964. In response to questions concerning the physical and mental condition of the testatrix she stated:
Well, I wouldn't say  she repeated herself, you know, from one visit to the other. She would tell things and repeat the same things that she had told the next visit.
* * * * * *
Well, I don't know. Her eye sight was poor, and her hearing was poor, just like all old people, I guess. Just more or less, as you get older, you just  your memory is not like it used to be or your eye sight.
Her testimony terminated with the following:
Q. Now, seeing her there over a 20-year period, Mrs. Briscoe, I want your opinion on this particular question. Basing on these things of your personal knowledge, the way that she would conduct herself, what you have told me about her repeating herself, I want you to tell this Court and Jury that in the month of March, 1964, and specifically the 16th day of March, did she, in your opinion, have the mental capacity to know and to understand the full effect and purport of any acts that she might do?
A. No, sir.
Q. Would you tell this Court and this Jury, being married into this family, where you had observed this lady for 20 years, would you say that she was of sound and disposing mind, or would you say that she was not?
A. I would say that she was not.
This is the total of the evidence directed to the mental incapacity of the testatrix. The opinion of each of these witnesses directed to mental incapacity was obviously based upon the infirmities of advancing age rather than upon any abnormal conduct indicative of mental aberration. We conclude that the opinions of mental incapacity are of little evidentiary value for the reason they are not supported by any facts as a basis for the witnesses' conclusion. Hickey v. Anderson, 210 Miss. 455, 49 So.2d 713 (1951), and Wood v. State, 58 Miss. 741 (1881).
While it is true that a jury may consider the testimony of one witness and disregard that of another and that the sheer number of witnesses is not the proper criterion for the evaluation of evidence, nevertheless the virtually uncontroverted testimony of competent witnesses may not be completely disregarded. We observe that the subscribing witnesses to the will testified favorably to the mental capacity of Mrs. Briscoe on the date of the will's execution and that her personal physician gave evidence that she was mentally competent, as did other long-time friends and business associates. A fair study of this record reveals evidence of testamentary capacity to make a will so great that it overwhelms the inferences of incapacity that might be drawn from the witnesses of the contestants.
We are reluctant to set aside the verdict of a jury, but are constrained to do so when the evidence simply will not support a verdict. Lewis v. Lewis, 241 Miss. 83, *9 129 So.2d 353 (1961), and Fortenberry v. Herrington, 188 Miss. 735, 196 So. 232 (1940).
Reversed and rendered.
RODGERS, P.J., and INZER, SMITH and BROOM, JJ., concur.
NOTES
[1] The word "sitter" is explained by other testimony as referring to an attendant of the testatrix.