MYERS, P.J.,
 

 for the Court.
 

 ¶ 1. Willie Ray Rutland died on January 80, 2005, at the age of seventy-three. Willie Ray had never married and had no children. On February 28, 2005, his “double first” cousin William Calvin Rutland (Calvin) offered a January 18, 2002, will for probate that named him as executor and Diane Rutland Nations, Willie Ray’s niece, as sole beneficiary. On May 19, 2005, Rickie Dale Rutland and Todd Rutland, nephews of Willie Ray, filed a petition to set aside the 2002 will. Rickie and Todd also offered for probate a February 13, 1989, will that left Willie Ray’s real property to them. Following a trial to the court, the chancellor set aside both wills and found that the estate should proceed intestate. Calvin, Diane, and her siblings Peggy Rutland Jones and Greg Rutland appeal from that judgment, arguing that the chancellor erred in setting aside the 2002 will. Rickie and Todd cross-appeal, arguing that the chancellor erred in setting aside the 1989 will. Finding that the chancellor erred in setting aside the 2002 will, we reverse, render, and remand for proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 2. Willie Ray lived on an eighty-eight acre farm inherited from his parents and located in Lawrence County, Mississippi. In 1989, when Willie Ray was fifty-seven years old, he executed a will leaving his real property to Rickie and Todd. Around 1990, Willie Ray retired from his employment with the State of Mississippi.
 

 ¶ 3. In July 1996, Willie Ray executed a power of attorney in favor of Todd, and he executed a deed conveying his real property to Todd and Rickie, reserving a life estate for himself. Willie Ray also added Josie Nell Lambert, Todd’s and Rickie’s mother, as a joint owner of his bank accounts. Testimony generally agreed that Willie Ray’s physical health began to decline in the years that followed. Willie Ray suffered several falls at home. In November 1999, Willie Ray moved into the nearby New Dawn Retirement Center, a
 
 *350
 
 small assisted-living facility in Lincoln County, Mississippi.
 

 ¶4. In October 2001, Todd and Josie Nell attempted to move Willie Ray from New Dawn into Todd’s newly rented home in Hattiesburg, Mississippi. Willie Ray resisted, and he sought the assistance of his cousin and neighbor, Calvin. Willie Ray returned to New Dawn, and shortly thereafter Calvin introduced Willie Ray to attorney Malcolm Rogers. Rogers testified that Willie Ray wished to remain at New Dawn but had been told by his nephews that he was unable to afford it. Willie Ray was concerned about the management of his assets, particularly his real property and a certificate of deposit he believed was worth $10,000. Rogers’s subsequent investigation determined that Willie Ray essentially had no assets. Rogers also discovered the 1996 deed in the land records of Lawrence County. Rogers informed Willie Ray that the real property had been deeded to Todd and Rickie in 1996 and that the certificate of deposit, actually valued at about $25,000, had been withdrawn in October 1999 by Josie Nell. Most of the proceeds had been converted to certificates of deposit in Todd’s name only. Willie Ray told Rogers that he had been led to believe that he retained full title to the realty and would do so until his death and stated that he believed the 1996 deed had been a will.
 

 ¶ 5. On October 18, 2001, Willie Ray terminated Todd’s power of attorney and executed a power of attorney in favor of Diane. In January 2002, Willie Ray filed suit against Todd, Rickie, and Josie Nell, alleging that the 1996 deed had been procured by fraud and that, during the sixty-three month period Todd held power of attorney, they had mismanaged or diverted approximately $110,000 of his other assets.
 
 [1]
 
 The suit was ultimately settled on June 23, 2003; the 1996 deed was set aside, and the other claims were dropped.
 

 ¶ 6. On January 18, 2002, Willie Ray executed a second will, naming Calvin as executor and Diane as sole beneficiary. This will was executed at New Dawn and witnessed by Rogers, Calvin, and the proprietor of New Dawn, Elaine Davis.
 

 ¶ 7. Following Willie Ray’s death in January 2005, Rutland and Diane offered the 2002 will for probate. Rickie and Todd filed a contest, alleging that Willie Ray lacked testamentary capacity to execute the 2002 will or, in the alternative, that it was a product of Diane’s undue influence. Rickie and Todd also offered the 1989 will for probate.
 

 ¶ 8. The chancellor, in a brief memorandum opinion, found that Willie Ray lacked testamentary capacity to execute the 2002 will. The chancellor cited Willie Ray’s 2002 lawsuit, which “brought into question [Willie Ray’s] capacity ... to understand what he was doing.” The chancellor also cited the testimony of “the bank officials and others.” The chancellor also set aside the 1989 will, finding that there was “no question that a fiduciary relationship existed” between Rickie, Todd, and Willie Ray.
 

 STANDARD OF REVIEW
 

 ¶ 9. In reviewing the judgment of a chancery court, an appellate court “will not disturb the findings of a chancellor when supported by substantial evidence
 
 *351
 
 unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous.”
 
 Hamilton v. Hopkins,
 
 884 So.2d 695, 699(¶ 12) (Miss.2003) (citations omitted). Additionally, where the chancellor has made no specific findings, we will proceed on the assumption that he resolved all such fact issues in favor of the appellee.
 
 Newsom v. Newsom,
 
 557 So.2d 511, 514 (Miss.1990). A chancellor’s interpretation and application of the law, however, is reviewed de novo.
 
 Tucker v. Prisock,
 
 791 So.2d 190, 192(¶ 10) (Miss.2001).
 

 DISCUSSION
 

 1. Direct Appeal: The 2002 Will
 

 A. Testamentary Capacity
 

 ¶ 10. To make a valid will, the testator must have been of sound mind at the time the will was executed. Miss.Code Ann. § 91-5-1 (Rev.2004). The supreme court has stated that “the test of one’s capacity to execute a will is the ability of the testator at the time to understand and appreciate the nature and effect of his act, the natural objects or persons to receive his bounty, and their relation to him, and is capable of determining what disposition he desires to make of his property.”
 
 In re Estate of Edwards,
 
 520 So.2d 1370, 1372 (Miss.1988) (citations omitted). The supreme court continued:
 

 At trial, the will’s proponents carry the burden of proof, which they meet by the offering and receipt into evidence of the will and the record of probate. A prima facie case is made by the proponent solely by this proof. Afterwards, although the burden of proof remains on the proponents, the burden of going forward with proof of testamentary incapacity shifts to the contestants, who must overcome the prima facie case. The proponents may then present rebuttal proof if necessary. In short, the proponents must prove the testator’s testamentary capacity by a preponderance of the evidence.
 

 Id.
 
 at 1372-73 (internal citations and quotations omitted).
 

 ¶ 11. Rogers and Calvin, subscribing witnesses to the 2002 will, testified unequivocally that Willie Ray possessed the requisite elements of testamentary capacity on January 18, 2002, when the will was executed. The record also contains the affidavit of Davis, an attesting witness, to the same effect.
 

 ¶ 12. The proponents of the 2002 will also offered the deposition of Dr. David Smith of the Pinnacle Medical Clinic in Summit, Mississippi. Dr. Smith testified that he had treated Willie Ray for a period of years before and after the execution of the 2002 will. On March 23, 2002, Dr. Smith examined Willie Ray and conducted a “mini mental status exam” at the patient’s request. Willie Ray scored “25 out of 30,” which Dr. Smith described as consistent with normal mentation. Dr. Smith noted that Willie Ray suffered from various medical conditions — hypertension, osteoarthritis, osteoporosis, monoclonal gam-mopathy of undetermined significance, and renal insufficiency- — but found “no evidence of dementia nor any impairment in his ability to make his own decisions.” Finally, Dr. Smith opined, to a reasonable degree of medical certainty, that on January 18, 2002, Willie Ray was capable of each of the requisite elements of testamentary capacity.
 

 ¶ 13. While the proponents of the will clearly made a prima facie case, the chancellor found that Willie Ray lacked testamentary capacity to execute the 2002 will. The chancellor cited the 2002 lawsuit against Rickie, Todd, and Josie Nell, as well as “the testimony of the bank officials and others.” In reviewing the record,
 
 *352
 
 however, we find little evidence that could support this finding.
 

 ¶ 14. Only the agreed settlement from the 2002 lawsuit cited by the chancellor has been made part of the record, and it offers no support for his findings regarding the prior lawsuit. Furthermore, the testimony in the record regarding this suit was unanimous that it concerned only actions undertaken between 1996 and October 2001; we fail to see any relevancy to Willie Ray’s testamentary capacity on January 18, 2002.
 
 See In re Estate of Smith, Smith v. Averill,
 
 722 So.2d 606, 611(¶ 13) (Miss.1998) (holding that the relevant time for testamentary capacity is the date of the execution of the will at issue).
 

 ¶ 15. Only a single deposition from a bank official was entered into evidence, that of Brenda Henderson, a financial service representative at Trustmark Bank. Her testimony primarily concerned the disposition of Willie Ray’s certificate of deposit and bank accounts. While she did note that Willie Ray “made it clear he was getting up in age” and had added Josie Nell to his accounts so “she could handle things for him if he was not able to,” Henderson offered nothing bearing upon Willie Ray’s testamentary capacity at the time of the 2002 will.
 

 ¶ 16. In reviewing the record, we find only two other witnesses that could support the chancellor’s finding, Rickie and Todd. Rickie, who lived in Atlanta, Texas, testified that by 2001 he would only visit with Willie Ray “probably four times a year for a couple days.” He also acknowledged that he had not spoken with Willie Ray for “a few months” prior to the execution of the 2002 will.
 
 [2]
 
 Rickie testified that by that time Willie Ray had a “decreased” or “deteriorated” mental capacity and “was not fully functional.” When asked to cite examples of Willie Ray’s behavior that led him to this conclusion, Rickie testified that Willie Ray “was living alone most of the time,” “wouldn’t bathe,” had “quit driving,” and had “fallen down a couple of times.”
 

 ¶ 17. Todd testified that around 1998, Willie Ray “started going down.” Todd testified that Willie Ray “would forget things,” and related that a woman had come to Willie Ray’s house and offered to paint it. She distracted Willie Ray while another man attempted to burglarize the home. Todd stated that he believed Willie Ray had “started going kind of down” because “in a couple of weeks, the same people came back and tried to do it again.” Todd also testified that after Willie Ray moved into New Dawn in November 1999, “[his mental condition] progressively got worse.” By the time of the execution of the 2002 will, Todd testified, “I don’t think he really knew exactly what he was doing.” Todd testified that he had “tried to stay away from [Willie Ray] as much as possible,” after October 2001, but Todd added that “when we’ve had court proceedings ... he was like the same old uncle, like nothing had ever happened.”
 
 [3]
 

 ¶ 18. Both Todd and Rickie denied that they or their mother had mismanaged Willie Ray’s assets. Each also testified that Willie Ray had executed the 1996 deed on his own initiative and that neither nephew had been involved in transferring the property.
 

 ¶ 19. In reviewing this testimony we find nothing sufficient to support the
 
 *353
 
 chancellor’s finding that Willie Ray lacked testamentary capacity. Both Rickie and Todd acknowledged that they had not seen Willie Ray for several months prior to the execution of the 2002 will. “[T]estimony regarding capacity from witnesses who have not seen the testator in months will be deemed irrelevant by the Court.”
 
 Averill,
 
 722 So.2d at 611(1113). Such proof is “too distant to have significant import.”
 
 Id.
 
 at (¶ 15).
 

 ¶ 20. Furthermore, we require that the opinions of lay witnesses regarding testamentary capacity be supported by “facts as a basis for the witnesses’ conclusion.”
 
 In re Estate of Briscoe,
 
 293 So.2d 6, 8 (Miss.1974). Overly broad or generalized testimony indicating a lack of capacity will be deemed insufficient where it is contradicted by competent evidence and is “obviously based upon the infirmities of advancing age rather than upon any abnormal conduct indicative of mental aberration.”
 
 Id.
 
 Therefore, Rickie’s and Todd’s testimonies, at best, could demonstrate some occasional deficiency in Willie Ray’s long-term memory; such is not sufficient to establish an absence of testamentary capacity.
 
 See, e.g., Averill,
 
 722 So.2d at 611(1113) (holding that a person generally lacking testamentary capacity may make a valid will during a “lucid interval” where capacity exists).
 

 ¶ 21. Finally, on appeal the nephews argue that Willie Ray “was not even aware of the status of ownership of his property, nor the totality of his estate.” This is an apparent reference to Willie Ray’s confusion as to the value of his certificate of deposit and his belief that he retained full title to his real property. The only testimony regarding this, however, was offered by the attorney, Rogers, who testified that this was Willie Ray’s belief at the beginning of his representation of Willie Ray in October 2001. Rogers also testified that, at the time of the execution of the 2002 will, Willie Ray understood that he no longer possessed the certificate of deposit or full title to the property; Willie Ray filed the 2002 lawsuit contemporaneously with the execution of the will in an attempt to recover this property.
 

 ¶ 22. After a thorough review of the record, we conclude that the chancellor’s finding that Willie Ray lacked testamentary capacity to execute the 2002 will is not supported by sufficient evidence in the record.
 

 B. Undue Influence
 

 ¶ 23. While the chancellor did not expressly find that the 2002 will was a product of Diane’s undue influence, this was an alternative theory offered by the contestants. On appeal, they urge this court to assume that the chancellor resolved this issue in their favor and affirm the chancery court’s judgment setting aside the 2002 will as a product of undue influence.
 

 ¶ 24. We have stated:
 

 A will is said to be the product of undue influence when an adviser has been so importunate as to subdue the testator’s will and free agency. Such may be accomplished through a variety of methods, such as advice, arguments, or persuasion. However, not all influence exerted is undue. The influence must have been so overwhelming that the resulting instrument reflected the will of the adviser rather than the testator.
 

 In re Estate of Pigg,
 
 877 So.2d 406, 411(1124) (Miss.Ct.App.2003) (internal citations omitted).
 

 ¶ 25. A presumption of undue influence arises where a confidential relationship exists between the testator and a beneficiary and there is “some showing that the beneficiary under the will abused the relationship either by asserting domi
 
 *354
 
 nance over the testator or by substituting his intent for that of the testator.”
 
 In re Estate of Grantham,
 
 609 So.2d 1220, 1224 (Miss.1992). Such can be accomplished “where a beneficiary actively participates in the procurement, preparation or execution of the will.”
 
 Id.
 

 ¶ 26. In reviewing the record, we find it insufficient to support a finding of undue influence through direct evidence. The question of whether a presumption of undue influence arose requires further examination. Clearly, there was sufficient evidence to find that a confidential relationship existed between Diane and Willie Ray at the time of the execution of the will: Willie Ray suffered from numerous physical ailments; he resided in an assisted-living facility and required assistance to travel; Diane possessed a power of attorney; and she had handled Willie Ray’s finances since October 2001.
 

 ¶ 27. Assuming that a confidential relationship existed, the contestants must still produce evidence of an abuse of that relationship relating to the execution of the will. In reviewing the record, it is apparent that they failed to meet that burden.
 

 ¶ 28. Both Todd and Rickie admitted that they knew nothing of the circumstances of the execution of the 2002 will. Willie Ray’s cousin, Calvin, and his attorney, Rogers, both testified that Willie Ray had been introduced to Rogers by Calvin. The scope of the initial representation was not the drafting of a will, but the severance of the fiduciary relationship between Willie Ray and Todd and the recovery of Willie Ray’s assets that he believed had been wrongly diverted to his nephews.
 

 ¶ 29. Rogers testified that, while meeting with Willie Ray at New Dawn to discuss the 2002 lawsuit, he explained that if Willie Ray were to die during the pen-dency of the suit, any property recovered in the suit would be divided between his heirs at law through intestate succession.
 
 [4]
 
 Calvin was present during the meeting, and Davis was “in and out,” but Diane was not present.
 

 ¶ 30. Rogers asked Willie Ray if he desired a specific disposition of his property, and at that point Willie Ray asked Rogers to prepare a will. Willie Ray volunteered that he wished to leave his property to his niece, Diane.
 

 ¶ 31. Rogers testified that, at the time the will was executed, he “may” have met Diane once. Rogers testified that he had encountered Diane in the parking lot at New Dawn on one occasion, as she was arriving and he was leaving, but Rogers was unsure whether this was before or after the will was executed.
 

 ¶ 32. After discussing the will further with Willie Ray, Rogers returned to his office, drafted the will, and returned to New Dawn where the will was executed the same day.
 

 ¶ 33. Diane testified that she “had nothing to do” with the execution of the 2002 will. She testified that she lived in Roxie, Mississippi, and was not present at or near New Dawn on January 18, 2002. Diane stated that she had learned of the will several days or weeks after its execution.
 

 ¶ 34. The only testimony that could support a presumption of undue influence is Diane’s admission that she had driven Willie Ray to Rogers’s office once, or possibly twice, some time in 2001. This alone is simply too tenuous and too remote to the execution of the 2002 will to prove an abuse of the confidential relationship sufficient to raise a presumption of undue influence.
 

 
 *355
 
 ¶ 35. Therefore, we find the evidence insufficient to support a finding that the 2002 will resulted from undue influence. Accordingly, the chancellor erred in setting aside the 2002 will.
 

 2. Cross-Appeal: The 1989 Will
 

 ¶ 36. The chancellor found the 1989 will should be set aside, citing “a fiduciary relationship” between Willie Ray and Todd and Rickie. On cross-appeal, the nephews argue that this finding was unsupported by the record and legally insufficient to set aside the will. They also argue that no evidence in the record can support setting the 1989 will aside. On our review of the record, we agree with the first two propositions: no testimony or evidence offered at trial could support a finding of a confidential relationship between Rickie or Todd and Willie Ray in 1989, nor was any evidence offered that there was an abuse of such relationship if it existed.
 
 See Costello v. Hall,
 
 506 So.2d 293, 298 (Miss.1987). However, we find that the 1989 will was nonetheless properly set aside because the 2002 will expressly revoked all prior wills.
 
 See
 
 Miss.Code Ann. § 91-5-3 (Rev.2004). Accordingly, this issue is without merit.
 

 ¶ 37. THE JUDGMENT OF THE CHANCERY COURT OF LAWRENCE COUNTY IS REVERSED, AND JUDGMENT IS RENDERED FINDING THAT THE 2002 WILL IS VALID AND SHALL BE ADMITTED TO PROBATE. THE JUDGMENT IS AFFIRMED ON CROSS-APPEAL. THE CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES/CROSS-APPELLANTS.
 

 KING, C.J., LEE, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
 

 [1]
 

 . While the pleadings in the 2002 action were not made part of the record on appeal, testimony indicated that Willie Ray cited approximately $32,650 in checks written from his account to Josie Nell, $4,900 in checks to Todd, $2,775 in checks to "cash,” $18,600 in checks written to Walmart, $6,600 in ATM withdrawals, $1,200 in overdraft charges, $27,000 from the certificate of deposit (including interest and early withdrawal penalties), and $16,660 in retirement checks not deposited to Willie Ray's accounts.
 

 [2]
 

 . Rickie testified that he had last seen Willie Ray sometime after the family began discussing moving Willie Ray from New Dawn to Todd’s home in Hattiesburg, but that the final visit was prior to the October 2001 falling out.
 

 [3]
 

 . Todd testified on cross-examination that he stopped seeing Willie Ray in October 2001 and did not see Willie Ray again until some time in 2003.
 

 [4]
 

 . Rogers was, apparently, unaware of the 1989 will at the time.